# IN THE SUPREME COURT OF IOWA

No. 10–1315

Filed June 8, 2012

**SERGIO PEREZ,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Marshall County, Michael J. Moon, Judge.

Appellant seeks further review of a court of appeals decision affirming the district court's dismissal of his application for postconviction relief. **COURT OF APPEALS DECISION AND DISTRICT COURT JUDGMENT AFFIRMED.**

Michael H. Said of Law Offices of Michael H. Said, P.C., for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, Jennifer A. Miller, County Attorney, and James S. Scheetz, Assistant County Attorney, for appellee.

**MANSFIELD, Justice**.

In *Padilla v. Kentucky*, the United States Supreme Court decided a criminal defendant has a Sixth Amendment right to receive advice from counsel regarding the risk of deportation before pleading guilty. ___ U.S. ___, ___, 130 S. Ct. 1473, 1486, 176 L. Ed. 2d 284, 299 (2010). Sergio Perez argues he did not receive such advice from his attorney in 2000 before he pled guilty to a misdemeanor drug possession charge. For this reason, Perez has filed an application for postconviction relief seeking to have that conviction set aside.

We conclude Perez is not entitled to relief because only two possibilities exist here. One alternative is *Padilla* establishes a "new" rule of constitutional criminal procedure. If that is so, however, *Padilla* does not apply retroactively, and Perez may not rely upon it to set aside an earlier conviction. *See Teague v. Lane*, 489 U.S. 288, 310, 109 S. Ct. 1060, 1075, 103 L. Ed. 2d 334, 356 (1989) (generally denying retroactivity when a Supreme Court decision establishes a new rule of constitutional criminal procedure). The other possibility is that *Padilla* is not a new rule. But if that is the case, then Perez's application is time-barred because he could have filed it within three years of the date when his conviction became final and failed to do so. *See* Iowa Code § 822.3 (2009) (generally requiring postconviction relief applications to be filed within three years from the date the conviction is final unless the ground could not have been raised within the applicable time period). In short, Perez's claim cannot go forward because either it may not be raised retroactively or it is barred by the statute of limitations. Therefore, we affirm the judgment of the district court and the decision of the court of appeals, both of which denied Perez's claims.

## I. Background Facts and Proceedings.

According to the original minutes of testimony, on October 22, 2000, a large fight broke out at the El Parral Bar in Marshalltown. Police found the defendant Sergio Perez dazed but conscious lying on the ground outside. An ambulance soon arrived. One of the emergency medical technicians (EMT) who was treating Perez saw a plastic bag fall from his pants pocket. The EMT informed a Marshalltown police officer, who retrieved the bag. It contained a powdery substance which was later identified as 6.75 grams of methamphetamine.

Perez was initially charged with possession of more than five grams of a Schedule II controlled substance with intent to deliver in violation of Iowa Code section 124.401(1)(*b*) (1999), a class "B" felony, and failure to attach a drug tax stamp in violation of Iowa Code section 453B.12, a class "D" felony. Perez agreed to a plea bargain in which the charges were reduced to a single misdemeanor charge of possession of a Schedule II controlled substance in violation of Iowa Code section 124.401(5) and signed a written plea of guilty on December 22, 2000.

Perez's plea was accepted by the district court, and judgment was entered on December 22, 2000. As part of the plea agreement, Perez received a thirty-day jail sentence, with credit for thirty days already served. Perez did not appeal his conviction or sentence.

Perez is not a United States citizen. On April 12, 2010, over nine years after final judgment was entered in his criminal case and less than two weeks after the Supreme Court's *Padilla* decision, Perez filed an application for postconviction relief. In the application, he alleged his attorney had not notified him of the immigration implications of his guilty plea. Iowa precedent at that time did not require attorneys to provide this information. *See State v. Ramirez*, 636 N.W.2d 740, 745–46

(Iowa 2001). Perez also sought relief on the grounds that his rights to an interpreter and a recording of proceedings under Iowa Code sections 622A.2 and 622A.8 were violated during his guilty plea proceedings.

The State filed a motion to dismiss, urging that Iowa Code section 822.3 (2009) requires postconviction relief petitions to be filed within three years from the time a conviction becomes final and that Perez's application over nine years later was therefore time-barred. Perez resisted, maintaining that he could not have reasonably been expected to raise these objections to his plea proceedings within the applicable time period.

Following a hearing, the district court denied Perez's application on all grounds. Perez filed a timely appeal, and we transferred the case to the court of appeals. The court of appeals affirmed the district court's dismissal of Perez's application for postconviction relief, holding among other things that Perez had "failed to establish *Padilla* should apply retroactively to his postconviction relief application."

We granted Perez's application for further review.

## II. Standard of Review.

"Generally, an appeal from a denial of an application for postconviction relief is reviewed for correction of errors at law." *Goosman v. State*, 764 N.W.2d 539, 541 (Iowa 2009). We must "affirm if the trial court's findings of fact are supported by substantial evidence and the law was correctly applied." *Harrington v. State*, 659 N.W.2d 509, 520 (Iowa 2003). Where the applicant alleges constitutional error, our "review is de novo 'in light of the totality of the circumstances and the record upon which the postconviction court's rulings w[ere] made.' " *Goosman*, 764 N.W.2d at 541 (quoting *Giles v. State*, 511 N.W.2d 622, 627 (Iowa 1994)).

### III. Analysis.

**A. The *Padilla* Decision.** Perez's primary argument on appeal is that his trial counsel failed to advise him regarding the risk of deportation, a constitutional duty recognized by the United States Supreme Court in *Padilla.* *See* ___ U.S. at ___, 130 S. Ct. at 1486, 176 L. Ed. 2d at 299. *Padilla*, like the present case, involved a defendant who pled guilty to drug-related charges. *Id.* at ___, 130 S. Ct. at 1477, 176 L. Ed. 2d at 290. He later petitioned for postconviction relief, claiming ineffective assistance of counsel because he was not told that his plea could negatively affect his immigration status (and allegedly was affirmatively told he "did not have to worry about [his] immigration status since he had been in the country so long"). ___ U.S. at ___, 130 S. Ct. at 1478, 176 L. Ed. 2d at 290 (citation and internal quotation marks omitted).[1] The Kentucky Supreme Court affirmed the denial of Padilla's petition. *Id.* It held, as had eleven federal circuit courts and most state supreme courts, that the Sixth Amendment guarantee of effective assistance of counsel did not require an attorney to notify his or her client about collateral consequences of a guilty plea, including the effect on immigration status. *Id.* at ___, 130 S. Ct. at 1481, 176 L. Ed. 2d at 293; *id.* at ___, 130 S. Ct. at 1487, 176 L. Ed. 2d at 300 (Alito, J., concurring).

---

[1]Federal law provides:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(i) (2000).

The United States Supreme Court reversed. *Id.* at ___, 130 S. Ct. at 1487, 176 L. Ed. 2d at 299. The Court concluded that "constitutionally competent counsel" should have informed Padilla of the risk of deportation resulting from his plea. *Id.* at ___, 130 S. Ct. at 1478, 1480, 176 L. Ed. 2d at 290. The Court noted it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland.*" *Id.* at ___, 130 S. Ct. at 1481, 176 L. Ed. 2d at 293 (quoting *Strickland v. Washington,* 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674, 694 (1984)). The Court concluded that "[t]he collateral versus direct distinction is . . . ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation" and that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.* at ___, 130 S. Ct. at 1482, 176 L. Ed. 2d at 294.

Thus, applying the first part of the *Strickland* framework, the Court found that the assistance of Padilla's attorney fell below an objective standard of reasonableness established by "prevailing professional norms" as defined by American Bar Association standards and similar practice guides. *Id.* The Court noted that "[f]or at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea." *Id.* at ___, 130 S. Ct. at 1485, 176 L. Ed. 2d at 297–98. The Court added that "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Id.* at ___, 130 S. Ct. at 1483, 176 L. Ed. 2d at 295. Hence, the Court concluded that "[o]ur longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a

criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand" that counsel inform a defendant if his or her plea subjects him or her to the risk of deportation. *Id.* at ___, 130 S. Ct. at 1486, 176 L. Ed. 2d at 299.

The Court did not ultimately find that Padilla was entitled to relief. Under the two-part framework established in *Strickland,* Padilla still had to demonstrate prejudice, i.e., that he would not have pled guilty if properly informed of the risk of deportation. The Court noted that those "who collaterally attack their guilty pleas lose the benefit of the bargain obtained as a result of the plea." *Id.* at ___, 130 S. Ct. at 1485, 176 L. Ed. 2d at 298. Thus, it remanded the case for further proceedings in the Kentucky courts to determine whether Padilla had suffered prejudice. *Id.* at ___, 130 S. Ct. at 1487, 176 L. Ed. 2d at 299.

**B. *Teague* Standards for Retroactivity.** As we have noted, within two weeks of the *Padilla* decision, Perez applied for postconviction relief, asserting his trial counsel had failed to advise him of the risk of deportation when he pled guilty in 2000. Perez maintains that *Padilla* applies retroactively and that he may rely upon it to collaterally attack his 2000 conviction. *Teague* is the Supreme Court's leading pronouncement on when a federal constitutional rule of criminal procedure may be applied retroactively to a conviction that became final before the rule was announced. There, the Court indicated that "[u]nless they fall within an exception to the general rule, *new* constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* at 310, 109 S. Ct. at 1075, 103 L. Ed. 2d at 356 (emphasis added).[2]

---

[2]Potentially, this court could grant retroactive effect to a United States Supreme Court decision announcing a rule of constitutional criminal procedure even if that Court would not do so. However, this court has so far followed the *Teague* framework.

*Teague* defined a new rule as one that "breaks new ground or imposes a new obligation on the States or the Federal Government" or, to put it another way, "was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* at 301, 109 S. Ct. at 1070, 103 L. Ed. 2d at 349. Such new rules "generally should not be applied retroactively to cases on collateral review." *Id.* at 305, 109 S. Ct. at 1073, 103 L. Ed. 2d at 352. The *Teague* Court determined that it is " 'sounder, in adjudicating [collateral] petitions, generally to apply the law prevailing at the time a conviction became final than it is to seek to dispose of [collateral] cases on the basis of intervening changes in constitutional interpretation.' " *Id.* at 306, 109 S. Ct. at 1073, 103 L. Ed. 2d at 353 (quoting *Mackey v. United States*, 401 U.S. 667, 689, 91 S. Ct. 1171, 1178, 28 L. Ed. 2d 404, 418 (1971) (Harlan, J., concurring)). The Court invoked the principle of finality:

> Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect.

*Id.* at 309, 109 S. Ct. at 1074, 103 L. Ed. 2d at 355. In sum, the Court concluded, "The costs imposed upon the State[s] by retroactive application of new rules of constitutional law on [collateral review] . . . generally far outweigh the benefits of this application." *Id.* at 310, 109 S. Ct. at 1075, 103 L. Ed. 2d at 355 (citation and internal quotation marks omitted).

*Teague* allowed for two narrow exceptions to its principle that new rules do not apply retroactively. One is for new rules of criminal

---

*See Morgan v. State*, 469 N.W.2d 419, 422–25 (Iowa 1991); *Brewer v. State*, 444 N.W.2d 77, 81–82 (Iowa 1989).

procedure that are actually substantive because they place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Id.* at 311, 109 S. Ct. at 1075, 103 L. Ed. 2d at 356 (citation and internal quotation marks omitted). Thus, the first exception to nonretroactivity arises when previously illegal conduct is no longer prohibited by the law. The second exception is "reserved for watershed rules of criminal procedure . . . without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 311, 313, 109 S. Ct. at 1076, 1077, 103 L. Ed. 2d at 356, 358. Hence, the second exception involves new rules that are "central to an accurate determination of innocence or guilt" and also "implicit in the concept of ordered liberty." *Id.* at 313–14, 109 S. Ct. at 1077, 103 L. Ed. 2d at 358 (internal quotation marks omitted).[3]

*Padilla* clearly falls into neither exception. *Padilla* does not shield previously illegal conduct from the reach of the criminal law, nor is it based on a concern about the accuracy of prior determinations of guilt. In fact, no court has so far held the *Padilla* rule qualifies for the watershed/ordered liberty exception, and we agree that the exception does not apply. *See, e.g.*, *Figuereo-Sanchez v. United States*, No. 10–14235, 2012 WL 1499871, *6 (11th Cir. May 1, 2012) (holding that "*Padilla* did not announce a watershed rule of criminal procedure"); *see also United States v. Aceve*s, No. 10–00738, 2011 WL 976706, *4 (D. Haw. Mar. 17, 2011) (stating that "this court has found no judicial decision construing *Padilla* as stating a new rule that falls within the

---

[3]To highlight the narrowness of the second exception, since *Teague* the Supreme Court has rejected every claim that a new rule of constitutional criminal procedure qualifies for watershed status. *See Whorton v. Bockting*, 549 U.S. 406, 417–18, 127 S. Ct. 1173, 1181–82, 167 L. Ed. 2d 1, 11–12 (2007).

'ordered liberty' exception"). Therefore, *Padilla* only applies retroactively if it is not deemed a new rule.

There is a substantial split of authority on this point. The United States Court of Appeals for the Third Circuit and two state supreme courts have held that *Padilla* is merely an application of the general principle announced in *Strickland* that defendants are entitled to "reasonably effective assistance" of counsel. *See United States v. Orocio*, 645 F.3d 630, 641 (3d Cir. 2011); *Denisyuk v. State*, 30 A.3d 914, 923–25 (Md. 2011); *Commonwealth v. Clarke*, 949 N.E.2d 892, 904 (Mass. 2011); *see also Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. Generally, these courts have reasoned that if *Strickland* was the basic law at the time that counsel neglected to properly inform a defendant concerning potential immigration issues, then the *Padilla* application, interpretation, or restatement of *Strickland* should be applied retroactively even if it was only raised in a collateral attack on the conviction. These courts do not consider *Padilla* a new rule, but rather a new application or clarification of an old rule, and therefore eligible for retroactivity. *See Orocio*, 645 F.3d at 641 (stating that "*Padilla* followed directly from *Strickland* and long-established professional norms"); *Denisyuk*, 30 A.3d at 925 (stating that "*Padilla* is an application of *Strickland* to a specific set of facts"); *Clarke*, 949 N.E.2d at 904 (stating that "the defendant in *Padilla* sought only an application of *Strickland* that several courts had already reached").

On the other hand, the Fifth, Seventh, and Tenth Circuits have concluded that *Padilla* announced a new rule of law and have declined to apply it retroactively, citing among other things the previously prevailing view among lower federal courts and state courts that counsel did not have an obligation to advise concerning deportation risk. *See United*

*States v. Amer*, No. 11–60522, 2012 WL 1621005, *2 (5th Cir. May 9, 2012) ("*Padilla* departed markedly from the 'legal landscape' extant when [the defendants'] conviction became final in February 2009." (quoting *Beard v. Banks*, 542 U.S. 406, 413, 124 S. Ct. 2504, 2511, 159 L. Ed. 2d 494, 504 (2004))); *United States v. Chang Hong*, 671 F.3d 1147, 1155 (10th Cir. 2011) ("We find a reasonable jurist at the time of Hong's conviction would not have considered Supreme Court precedent to compel the application of *Strickland* to the immigration consequences of a guilty plea."); *Chaidez v. United States*, 655 F.3d 684, 690 (7th Cir. 2011) ("Such rare unanimity among the lower courts is compelling evidence that reasonable jurists reading the Supreme Court's precedents in April 2004 could have disagreed about the outcome of *Padilla*."), *cert. granted*, __ S. Ct. __, 2012 WL 1468539 (April 30, 2012). One state supreme court has ruled likewise that Padilla sets forth a new rule of constitutional criminal procedure. *State v. Gaitan*, 37 A.3d 1089, 1105 (N.J. 2012) (stating that "*Padilla* involved no simple application of the well-established *Strickland* rule to a new set of facts").

On April 30, 2012, the United States Supreme Court granted certiorari in *Chaidez*, the Seventh Circuit case. *Chaidez*, __ S. Ct. __, 2012 WL 1468539. Thus, the Supreme Court will determine in its October 2012 term whether *Padilla* is to be applied retroactively. However, as we discuss below, we can decide this case without predicting how the Supreme Court will decide *Chaidez*.

**C. Iowa Code Section 822.3.** Iowa Code section 822.3 provides the statute of limitations for postconviction relief applications. Such applications

> must be filed within three years from the date the conviction
> or decision is final or, in the event of an appeal, from the
> date the writ of procedendo is issued. However, this

> limitation does not apply to a ground of fact or law that could not have been raised within the applicable time period.

Iowa Code § 822.3. We have upheld the constitutionality of this provision. *See Davis v. State*, 443 N.W.2d 707, 710 (Iowa 1989) (commenting that "[a] legitimate concern is that the process . . . end within reasonable time limits"). There is no dispute that Perez filed his application more than three years after the judgment in his criminal case became final. Thus, in order to avoid the time bar of section 822.3, Perez must be asserting a ground of fact or law that "could not have been raised" earlier.

We agree with the State that it would be "contradictory" for Perez to argue that *Padilla* is merely an application of preexisting law for *Teague* retroactivity purposes while simultaneously arguing that he could not have raised the issue within the three-year limitations period. "A reasonable interpretation of the statute compels the conclusion that exceptions to the time bar would be, for example, newly-discovered evidence or a ground that the applicant was at least not alerted to in some way." *Wilkins v. State*, 522 N.W.2d 822, 824 (Iowa 1994).

We recognize that prior to *Padilla*, our precedents (like those of the federal courts of appeals and most other states) rejected the notion that counsel had a constitutional duty to advise clients about deportation consequences. *See Ramirez*, 636 N.W.2d at 745–46; *Mott v. State*, 407 N.W.2d 581, 583–84 (Iowa 1987). But we acknowledged there was "some merit" in the contrary position. *Ramirez*, 636 N.W.2d at 746; *Mott*, 407 N.W.2d at 583. The *Ramirez* case, which considered whether *Mott* should be overruled, was pending at the time Perez's conviction became final and was not decided until almost nine months thereafter. Furthermore, at any time our precedents could have been overturned by

the United States Supreme Court, which is in fact what happened when *Padilla* was decided. And shortly after our decision in *Ramirez*, we amended rule 2.8 to require defendants pleading guilty to be informed that "a criminal conviction, deferred judgment, or deferred sentence may affect a defendant's status under federal immigration laws." *See* Iowa R. Crim. P. 2.8(2)(b)(3) (effective February 15, 2002). Hence, if *Padilla* does not embody a new rule of constitutional criminal procedure, we believe the matter could have been raised by Perez, as that term is used in section 822.3, within the applicable time period.

The federal postconviction relief statute has a one-year statute of limitations that is subject to tolling when the right asserted "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3) (2006). Since *Padilla* was decided, many federal district courts have rejected efforts by defendants to thread the needle and argue at the same time that (1) *Padilla* has retroactive effect under *Teague* because it was dictated by earlier Supreme Court precedent and (2) *Padilla* involves a "newly recognized" right for federal habeas tolling purposes. *See, e.g., Rodriguez v. United States*, No. 1:10-CV-23718-WKW, 2011 WL 3419614, *8 (S.D. Fla. Aug. 4, 2011) ("[T]he *Padilla* decision, if an 'old rule,' is not a change in the law; and if a 'new rule,' it is not fully retroactive to cases on collateral review."); *Aceves*, 2011 WL 976706, at *3 (stating that if *Padilla* was a restatement of existing law applicable to cases on collateral review it "cannot [also] serve as the reason to restart the limitations period" under 28 U.S.C. § 2255(f)); *Mudahinyuka v. United States*, No. 10 C 5812, 2011 WL 528804, *4 (N.D. Ill. Feb. 7, 2011) (holding that because *Padilla* did not announce a new rule it was not a newly recognized right for the purpose of tolling the one-year limitations period

in 28 U.S.C. § 2255(f)); *United States v. Shafeek*, No. 10–12670, 2010 WL 3789747, *3 (E.D. Mich. Sept. 22, 2010) ("Because the *Padilla* opinion may not be considered a 'new rule,' [the defendant] cannot show that the *Padilla* opinion should be applied retroactively [under 28 U.S.C. § 2255(3)]"); *United States v. Dass*, No. 05–140 (3) (JRT/FLN), 2011 WL 2746181, *6 (D. Minn. July 14, 2011) ("[I]t would be illogical to determine Padilla is **not** a new constitutional rule of criminal procedure, but **is** a right newly recognized by the Supreme Court.").

A few state courts have similarly rejected claims that *Padilla* constitutes both an old rule, eligible for retroactive application, and a new rule in the context of a postconviction relief statute of limitations. *See Commonwealth v. Garcia*, 23 A.3d 1059, 1064–66 (Pa. Super. Ct. 2011) (stating that the holding in *Padilla* was a clarification and did not constitute a "new constitutional right" as required to qualify for Pennsylvania's postconviction relief statute's timeliness exception); *State v. Cervantes*, 273 P.3d 484, 487 (Wash. Ct. App. 2012) ("*Padilla* does not represent a significant change in the law and therefore does not create an exception to the one-year time limit in [Washington's postconviction relief statute].").

Perez's filings in this court, although generally helpful and well-written, illustrate the internal contradiction in his position. In his original appellate brief, Perez urged that the district court erred in applying section 822.3 because "[u]ntil *Padilla*, immigration issues were considered collateral consequences of a plea." But in his later application for further review, in which he contested the court of appeals' view that *Padilla* did not have retroactive effect, Perez insisted that "*Padilla* simply 'clarified' what may have been ambiguities in existing law." What Perez does not explain is how *Padilla* can be both a

clarification of the law and a ground he could not have raised within the three-year time bar.

Accordingly, we leave it to the Supreme Court to decide next term whether *Padilla* is retroactive.  We hold only that if it is, Perez should have raised his claim regarding failure to advise of immigration consequences within the three-year limitations period of section 822.3.[4]

**IV. Conclusion.**

For the reasons stated, we affirm the district court's dismissal of Perez's application for postconviction relief.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

---

[4]Perez also contends that at the time of his plea, he could not adequately understand English and that he was improperly denied an interpreter in violation of Iowa Code section 622A.2 (1999) and a recording of non-English testimony in violation of section 622A.8.  In the exercise of our discretion, we will let the court of appeals opinion stand as the final decision on these matters.  *See State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010).