**IN THE COURT OF APPEALS OF IOWA**

No. 14-1052
Filed July 9, 2015

**JUSTIN ALAN ROBUCK,**
　　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　　Respondent-Appellee.
_____

　　　　Appeal from the Iowa District Court for Jasper County, Richard B. Clogg,

Judge.

　　　　Justin Robuck appeals the district court's denial of his application for

postconviction relief.  **AFFIRMED.**

　　　　Joseph P. Vogel of Vogel Law, P.L.L.C., Des Moines, for appellant.

　　　　Thomas J. Miller, Attorney General, Kyle P. Hanson, Assistant Attorney

General, Michael K. Jacobsen, County Attorney, and James W. Cleverley Jr.,

Assistant County Attorney, for appellee State.

　　　　Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

Justin Robuck appeals the district court's denial of his application for postconviction relief from his 2008 conviction for murder in the second degree, in violation of Iowa Code section 707.3 (2007). Upon our review, we affirm the court's order denying Robuck's application for postconviction relief.

## I.     *Background Facts and Proceedings*

In 2008, following a jury trial, Robuck was convicted of second degree murder following the stabbing death of Jerry Pittman II. The following facts surrounding the murder were set out in our opinion on direct appeal:

> On the night of Friday, October 5, 2007, Robuck and a group of friends, including Tyler Oberhart, Ray Travis, Courtney Hummel, and Mishana Cornejo, spent the evening partying together. Earlier that evening, Oberhart gave Pittman some Xanax pills in exchange for marijuana, and Oberhart later discovered that the marijuana he received was actually lawnmower clippings. Around 3:00 a.m., October 6, Robuck, Oberhart, Travis, Hummel, and Cornejo, went to Pittman's house in order to "punk him out," or scare him into giving them their marijuana or money back. When they arrived at Pittman's, Robuck, Oberhart, and Travis exited the car, all carrying a knife or other weapon. After summoning Pittman to come out of the house, they discovered he was in the backyard wielding a knife. Threats were exchanged, and Pittman lunged at Oberhart. Pittman then went into the garage, purportedly to get the marijuana, but instead came out of the garage swinging a PVC pipe and struck Oberhart. After wrestling the pipe away from Pittman, Oberhart told Pittman, "You better run." Pittman began running, chased by Oberhart and Robuck, both armed with knives, and Travis, armed with a rock-like weapon. Upon catching him, Oberhart held him to the ground by sitting on his upper body and Robuck sat on Pittman's legs. Both Oberhart and Robuck repeatedly stabbed Pittman. A later autopsy would reveal Pittman suffered twenty-nine stab wounds. Immediately after the stabbing, the three returned to the car with Robuck exclaiming, "I killed him. I killed him. I killed him . . . . I stabbed him at least 30 times." He also said, "He is dead. He is dead. He is fricking dead."
>     During the altercation, Robuck's hand was injured. When he later sought medical treatment at a hospital, he informed the doctor he threw a knife into the air, and as it came back down, the knife

stabbed him in the hand. Suspicious of the explanation, the doctor contacted the police. Robuck told the police a different story as to how his injury occurred. Following an investigation, Robuck and Oberhart were charged with first-degree murder.

*State v. Robuck*, No. 08-1864, 2009 WL 3775128, at *1 (Iowa Ct. App. Nov. 12, 2009).

Robuck filed an application for postconviction relief. Among other claims, Robuck raised a claim of juror misconduct: "Failure of a juror to allow [Robuck] to have the opportunity to full develop his case before establishing a verdict." Zachary Seaman, Robuck's friend, testified in Robuck's defense at his criminal trial. At the PCR hearing, Seaman testified that during the trial, after the jury was sworn in but before he testified, he was waiting in the hallway outside the courtroom and overheard a juror say, "I don't understand why we're doing this. He's already guilty." Seaman stated the juror "sounded like he was talking to fellow jurors, people that were around him," but Seaman could not recall if other jurors acknowledged the comment.

Rona Skow, whose daughter was best friends with Robuck, also testified at Robuck's criminal trial. At the PCR hearing, Skow testified she was in the hallway sitting by Seaman when she heard a juror comment, "He's guilty, let's just get it over. I have better things to do." Skow believed the jury was on the way back from lunch on a day during the first week of trial. Skow did not see the juror make the comment to anyone else and no one responded to the comment.

According to Robuck, the juror's comment made during trial in the hallway leading to the courtroom—overheard by two of his witnesses—constitutes juror misconduct entitling him to a new trial. The State countered that Robuck failed to

prove the juror's statements were calculated to, and probably did, influence the jury's verdict. Following the hearing, the district court entered an order denying Robuck's claim. Robuck appeals.

## II.   *Standard of Review*

We review the district court's ruling on an application for postconviction relief for correction of errors. *See Perez v. State*, 816 N.W.2d 354, 356 (Iowa 2012). Insofar as Robuck's claim rests on constitutional principles, we review it de novo. *See State v. Oliver*, 812 N.W.2d 636, 639 (Iowa 2012).

## III.   *Discussion*

At the outset, the State challenges the timeliness of Robuck's juror misconduct claim.[1] The State claims Robuck "was required to raise his jury misconduct claim before sentencing in 2008" and Robuck "did not present sufficient cause to justify the untimeliness of his challenge" or "prove actual prejudice" under Iowa Code section 822.8 (providing that postconviction relief may not be granted on claims not asserted in prior applications for relief in the absence of a showing of good cause). *See Osborn v. State*, 573 N.W.2d 917, 921 (Iowa 1998) ("[A]ny claim not properly raised on direct appeal may not be litigated in postconviction unless there is a showing of 'sufficient reason' or 'cause' for not properly raising it previously, and of actual prejudice resulting from the alleged error.").

---

[1] The State also raised this issue before the district court. *Cf. DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002) ("Unquestionably, the State could have urged in the district court DeVoss' failure to raise in her direct appeal her ineffective-assistance-of-counsel claim regarding her trial counsel's failure to pursue the coaching issue at the original trial. The State's failure to do so waives DeVoss' failure to comply with section 822.8, allowing us to proceed to the merits of DeVoss' postconviction-relief claims.").

Robuck presented no evidence regarding when he or his counsel became aware of the juror's comment. He presented no sufficient reason or cause why he was prevented from making a timely challenge to the juror's comment. And although ineffective assistance of counsel may provide "sufficient reason" or "cause" to permit this issue to be raised for the first time in a proceeding for postconviction relief, Robuck does not raise his claim alternatively in that guise. *See Osborn*, 573 N.W.2d at 921; *also State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010) ("Ineffective-assistance-of-counsel claims are an exception to the traditional error-preservation rules.").

Bypassing this error preservation concern in an effort to stave off another potential postconviction-relief proceeding, *see State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) (bypassing an error-preservation problem and proceeding to the merits of the appeal), we conclude Robuck's claim is unpersuasive. "[I]n order to be entitled to a new trial based upon juror misconduct, the

> (1) evidence from the jurors must consist only of objective facts as to what actually occurred in or out of the jury room bearing on misconduct; (2) the acts or statements complained of must exceed tolerable bounds of jury deliberation; and (3) it must appear the misconduct was calculated to, and with reasonable probability did, influence the verdict.

*State v. Webster,* ___ N.W.2d. ___, ___, 2015 WL 3814823, at *8 (Iowa 2015) (quoting *State v. Cullen*, 357 N.W.2d 24, 27 (Iowa 1984)); *see also Ryan v. Arneson*, 422 N.W.2d 491 (Iowa 1988) (clarifying the first prong of the *Cullen* test by interpreting Iowa Rule of Evidence [5].606(b) to allow statements regarding extraneous prejucicial information or outside influence that was brought to bear

on the jury, but excluding evidence of internal deliberations of the jury). We begin and end our analysis of Robuck's claim with the third requirement.

The evidence presented by Robuck on the juror's comment is far from convincing. The evidence came in the form of testimony from two of Robuck's friends who also testified on his behalf at the criminal trial. Although Skow stated she heard the juror's comment while sitting beside Seaman, Skow and Seaman gave inconsistent accounts of the substance of the juror's comment, the day the comment was made, and the location of the juror who made the comment. Moreover, both Seaman and Skow admitted they did not know the intent of the juror's comment or whether the other jurors even heard the comment, and both stated no other juror responded to the comment and the comment was not repeated. Additionally, we observe the district court "has a broad discretion in ruling on these matters." *Cullen*, 357 N.W.2d at 27, *see also Webster*, ___ N.W.2d. at ___, 2015 WL 3814823, at *5 ("We review a denial of a notion for new trial based upon juror misconduct or juror bias for an abuse of discretion."). Had this matter been brought to the attention of the trial court in a timely manner, in light of the evidence presented at the PCR hearing, we seriously doubt the court would have ordered a new trial.

Upon our review, we conclude Robuck failed to prove the juror's comment "was calculated to, and with reasonable probability did, influence the verdict" and his claim of juror misconduct fails. *See Webster*, ___ N.W.2d at ___, 2015 WL 3814823, at *10. The PCR court did not err in denying Robuck's application for postconviction relief. We therefore affirm.

**AFFIRMED.**