# IN THE COURT OF APPEALS OF IOWA

No. 17-0514
Filed May 2, 2018

**TYLER HOBBS,**
 Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
 Respondent-Appellee.
_____

Appeal from the Iowa District Court for Lee (South) County, John G. Linn, Judge.

A postconviction relief applicant appeals the district court's denial of his application. **AFFIRMED.**

Jeffrey M. Lipman of Lipman Law Firm, P.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**VOGEL, Presiding Judge.**

Tyler Hobbs appeals the district court's denial of his application for postconviction relief (PCR).  We determine Hobbs has not proven his trial counsel was ineffective for failing to inform him of a defense of others.  We conclude the district court properly denied his request for PCR and affirm.

Hobbs was tried, convicted, and sentenced for the offense of murder in the first degree.  He appealed, and we set out the underlying facts in his direct appeal:

> The facts of the case surround November 5 and 6, 2010.  On the dates in question Hobbs attended the performance of a band at the Lucky Star Bar in St. Francisville, Missouri.  The band's lead singer, Kimberly Jaeger, was Hobbs's girlfriend and would later provide key testimony against him.  At the close of the band's performance, Hobbs approached the bar and spoke with Shawn Wright, the decedent in this case.  Hobbs offered Wright a ride to Keokuk, which Wright accepted.  Hobbs, Wright, and Jaeger rode in Hobbs's car from St. Francisville to Keokuk.
>
> During their brief stay in Keokuk Wright purchased marijuana.  The circumstances of that purchase are in dispute.  However, what is not in dispute is that following the purchase Hobbs, Wright, and Jaeger set out on a return trip to St. Francisville.  Jaeger testified that during that trip Wright became sexually and physically aggressive, pushing drugs on her and repeatedly forcing her to kiss him.  At some point, the three travelers decided to stop at an abandoned farmhouse located in Iowa; it is at this point that the testimony of Jaeger is disputed.
>
> Jaeger testified that upon arriving at the farmhouse she exited the car to avoid the advances of Wright.  Jaeger testified that, in an effort to free herself from Wright, she attempted to push him away and fell to the ground.  Jaeger then testified that she observed Hobbs hit Wright in the head with a wooden mallet.  Jaeger claims to have "crab walked" backwards to avoid Wright as he fell to the ground.  Jaeger testified that she could see the fatal force of the impact in Wright's eyes as he fell.  After a period of stunned silence, Hobbs directed Jaeger to empty Wright's pockets.  Hobbs then struck Wright with the mallet several times to silence him.
>
> Testifying in his own defense, Hobbs agreed that the parties stopped at the farmhouse.  He stated, however, that he walked away from Wright and Jaeger to urinate.  Hearing a shriek of some kind, Hobbs stated that he returned to find Jaeger standing over Wright

with the mallet in her hand. He claims that Jaeger told him Wright had tried to rape her.

Jaeger and Hobbs generally agree on the course of events which followed. They returned to Hobbs's trailer for a brief time. Hobbs then borrowed a truck and returned to the farmhouse. He wrapped Wright's head in a plastic bag and secured the bag with speaker wire. Hobbs transported Wright's body in the back of the truck to the riverfront location where Wright would later be found dead. Hobbs then returned to the trailer and began cleaning the truck with bleach and water. Later, Hobbs and Jaeger returned to the farmhouse and recovered Wright's dentures and a drug pipe. Both items were eventually thrown from a bridge near St. Francisville.

Jaeger's initial statement to police and her testimony are in stark contrast. She contends that Hobbs instructed her to be quiet so as to protect herself from the consequences of the killing. This instruction was reflected in her initial, inconsistent statement to police. Hobbs testified that his actions following the killing were an effort to protect Jaeger.

*State v. Hobbs*, No. 12-0730, 2013 WL 988860, at **1–2 (Iowa Ct. App. Mar. 13, 2013). We affirmed his conviction.

On October 16, 2013, Hobbs filed an application for PCR. He subsequently amended and recast his application for PCR. In a deposition for this PCR claim, Hobbs testified he attacked and killed Wright after he heard Jaeger scream and saw her lying on the ground with Wright standing over her. Hobbs acknowledged he committed perjury when he provided contradictory testimony at trial. He testified his trial attorneys never explained a claim of defense of others to him and only said it did not apply in Iowa. Hobbs argues this failure to explain the defense of others constitutes ineffective assistance of counsel. The district court rejected Hobbs's ineffective assistance of counsel claim and other arguments not on appeal, and it denied his application for PCR. Hobbs appeals the rejection of his claim that his trial counsel was ineffective for failing to explain the defense of others.

"Generally, an appeal from a denial of an application for postconviction relief is reviewed for correction of errors at law." *Perez v. State*, 816 N.W.2d 354, 356 (Iowa 2012) (citation omitted). "However, when the applicant asserts claims of a constitutional nature, our review is de novo. Thus, we review claims of ineffective assistance of counsel de novo." *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). "[W]e give weight to the lower court's findings concerning witness credibility." *Id.*

"In order to succeed on a claim of ineffective assistance of counsel, a defendant must prove: (1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Both elements must be proven by a preponderance of the evidence." *Ledezma*, 626 N.W.2d at 142 (citations omitted).

While Hobbs testified no one explained the defense of others to him, both of his trial attorneys testified they discussed the defense of others during trial preparation. Attorney Jon Henson acknowledged the defense of others did not apply based on the evidence available at trial; however, he denied saying Iowa does not recognize the defense of others, and he testified they discussed the defense prior to trial. Attorney Kendra Abfelter testified the defense of others "was definitely one of the things we were discussing . . . until very, very close to the presentation of Mr. Hobbs's testimony."

Hobbs's testimony directly contradicts the testimonies of his trial attorneys. The district court accepted the attorneys' testimonies that they had discussed the defense of others with Hobbs. The court is entitled to believe the attorneys over

Hobbs's self-serving testimony, especially considering Hobbs admitted to committing perjury.  *See id.*  We give weight to the district court's determinations of witness credibility.  *See id.*  After reviewing the record, including all depositions provided for this PCR claim, we agree Hobbs has not proven by a preponderance of the evidence that his trial attorneys failed to explain the defense of others.  Thus, Hobbs has not shown his trial counsel failed to perform an essential duty.  *See Maxwell*, 743 N.W.2d at 195.  Therefore, we affirm the district court's finding that Hobbs has not proven his trial counsel was ineffective for failing to explain the defense of others.

**AFFIRMED.**