# IN THE COURT OF APPEALS OF IOWA

No. 17-1279
Filed June 19, 2019

**MICHAEL HOWARD LANG,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Woodbury County, Edward A. Jacobson, Judge.

Michael Lang appeals the denial of his application and supplemental application for postconviction relief. **AFFIRMED.**

Rees Conrad Douglas, Sioux City, for appellant.

Michael H. Lang, Clarinda, pro se.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee State.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**BOWER, Judge.**

Michael Lang appeals the district court's dismissal of his application for postconviction relief (PCR) filed in 2016 and his 2017 supplemental application. Lang claims structural error in the court's decision, but the record is inadequate for us to evaluate this claim. We find most of Lang's claims are time-barred, have been previously decided, or otherwise not properly before this court. We find the new evidence challenging hair analysis at trial would not have changed the result of the trial. We affirm.

### I.     Background Facts & Proceedings

In 1988, Lang held the victim in his home against her will overnight, chained her, hit her repeatedly, and threatened her. A jury convicted Lang of kidnapping in the first degree. Our court affirmed his conviction in 1990. *State v. Lang*, No. 88-1469 (Iowa Ct. App. Mar. 27, 1990). The current appeal rises out of Lang's seventh application for PCR. He has filed multiple direct-appeal challenges and appeals of his PCR applications which have been denied.[1] Lang filed the current application on September 28, 2016, alleging 2015 Iowa Supreme Court cases provided a change in legal basis entitling him to relief. Lang filed a supplemental application on June 8, 2017, along with a motion to vacate his criminal conviction and motion for new trial filed under his original criminal case on June 27, 2017,

---

[1]  *See, e.g.*, *Lang v. State*, No. 14-1997, 2015 WL 9450779 (Iowa Ct. App. Dec. 23, 2015); *Lang v. State*, No. 12-1726, 2013 WL 3822113 (Iowa Ct. App. July 24, 2013); *Lang v. State*, No. 12-1452, 2013 WL 3287213 (Iowa Ct. App. June 26, 2013); *State v. Lang*, No. 10-1797, 2011 WL 5867932 (Iowa Ct. App. Nov. 23, 2011).

based on the use of hair analysis evidence in his jury trial.[2] The State filed a motion for summary judgment and supplemental motion for summary judgment, both of which the district court granted.[3]

## II.     Arguments on Appeal

On appeal, Lang's counsel claims the district court committed structural error by requesting ex parte the State prepare findings of fact and conclusions of law.[4] Counsel urges us to find structural error violating Lang's due process rights by depriving Lang of his right to counsel. The requested relief is to vacate the district court's decision, reverse the court's dismissal of Lang's PCR application, and remand for adjudication on the merits.

Lang submitted multiple pro se filings to this court on appeal. We will only address the issues raised in his application and amended application for PCR.[5] *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental

---

[2]  In May 2017, the Iowa Wrongful Conviction Division had notified Lang convictions where the State relied on hair microscopy analysis were under review.

[3]  The district court also considered and decided the motions to vacate and for new trial with Lang's PCR application, finding no genuine issue of material fact and granting the State's supplemental motion for summary judgment. Lang also appealed the motions to vacate and for new trial, which the Supreme Court severed into a separate appeal in October 2017. On November 14, 2018, the Supreme Court dismissed that appeal.

Only issues arising from the PCR application and amended application are before us on this appeal.

[4]  The district court judge emailed the county attorney ex parte to request a proposed judgment without copying Lang's counsel. The judge then adopted the county attorney's proposed ruling verbatim, dismissing Lang's application and imposing sanctions. David K. Boyd & Robert A. Hutchison, *Report of Independent Reviewers* 27 (June 1, 2018), https://www.iowacourts.gov/collections/291/files/519/embedDocument/.

[5]  In addition to the claims included in his application and amended application for PCR, Lang raised multiple other claims on appeal including constitutional claims, contempt, and issues decided in previous appeals. Those claims arising directly from the original conviction are time barred under Iowa Code section 822.3 (1989). To the extent some of Lang's claims have been finally adjudicated in prior actions, they may not be relitigated. *See* Iowa Code § 822.8; *Lang*, 2015 WL 9450779, at *2. Those claims relating to his motion to vacate and motion for new trial are not considered here, as the claims were severed to a separate appeal.

doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Lang claims case law from 2015 changed a legal basis underlying his conviction and that his sentence was inherently illegal and in violation of the ex post facto clauses of the state and federal constitutions. Lang also raises a claim of newly-discovered evidence discrediting the hair analysis evidence presented during his criminal trial.

The State responds to Lang's claim of structural error that the district court has not had a chance to address the claim and error has not been preserved. As to the hair analysis testimony, the State claims Lang did not meet his burden to establish he should obtain relief on the basis of newly-discovered evidence.

### III. Standard and Scope of Review

An applicant requesting PCR must file within three years of the date the conviction was final or, following an appeal, the date the writ of procedendo issued. Iowa Code § 822.3 (2017). An exception to the limitation period occurs when the applicant raises "a ground of fact or law that could not have been raised within the applicable time period." *Id.*

We normally review an appeal from the denial of a PCR application for correction of errors at law unless a constitutional error is alleged, which we review de novo. *Perez v. State*, 816 N.W.2d 354, 356 (Iowa 2012). "A postconviction action based on newly discovered evidence is reviewed for corrections of errors at law." *More v. State*, 880 N.W.2d 487, 498 (Iowa 2016). PCR applications claiming a violation of constitutional rights are "reviewed de novo 'in light of the totality of the circumstances and the record upon which the postconviction court's ruling[ ]

was made.'" *Id.* at 499 (quoting *Goosman v. State*, 764 N.W.2d 539, 541 (Iowa 2009)).

### IV.  Analysis

*Structural error.*  Structural error is a defect affecting the framework under which the trial proceeds.  *Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011).  The error must render the underlying procedure so unreliable as to entitle the party to a new proceeding.  *Id.*  The term structural error does not automatically entitle a claimant to an automatic reversal for a new trial, it "means only that the government is not entitled to deprive the defendant of a new trial by showing that the error was 'harmless beyond a reasonable doubt.'"  *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017).

Our error preservation rules are designed to allow both sides to be heard on an issue and provide an opportunity to take corrective measures.  *State v. Mann*, 602 N.W.2d 785, 791 (Iowa 1999).  The rules also provide the appellate courts with an adequate record to review the purported errors.  *State v. Pickett*, 671 N.W.2d 866, 869 (Iowa 2003).  Lang concedes error has not been preserved, instead asking us to apply an exception normally applied to defective sentences or ineffective assistance of counsel.  However, the exception requires a record adequate to decide the claim.  *State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010).  No one has testified or admitted any evidence into the trial record to allow us to review the claim.  Lang's counsel relies on a report released following the district court's denial of his application for PCR, but which only lists Lang's case as an affected decision without explanatory details.  We find the record is inadequate for us to determine whether reversible error occurred.

*Retroactivity of cases.* Lang claims two Iowa Supreme Court cases from 2015—*State v. Robinson*, 859 N.W.2d 464 (Iowa 2015), and *State v. Ambrose*, 861 N.W.2d 550 (Iowa 2015)—apply retroactively and constitute sufficient change in the law to support his PCR application. In 2016, we explained *Robinson*'s holding on the confinement requirement of a kidnapping conviction simply clarified existing law and did not announce a new rule of law that could not have been raised within the prescribed time period. *Hampton v. State*, No. 15-1802, 2016 WL 2743451, at *1 (Iowa Ct. App. May 11, 2016).[6] Without a new rule of law, this claim does not fall within an exception to the limitations period. In *Ambrose*, the supreme court found it unnecessary to determine whether an acquittal-first instruction constitutes a misstatement of law; the case does not establish the legal basis Lang claims. *See Ambrose*, 861 N.W.2d at 556–57. Neither case provides a new, retroactive ground of law to support Lang's application. We find Lang's claims based on his interpretation of *Robinson* and *Ambrose* are not based on "a ground of fact or law that could not have been raised within the applicable time period" and are therefore time barred by Iowa Code section 822.3.

*Newly-discovered evidence.* Lang claims he should be granted relief based on newly-discovered evidence relating to the hair analysis evidence presented at his trial.

> In order to prevail in a PCR action because of newly discovered evidence, the defendant must show
> > (1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching; and

---

[6] We note our holding on the retroactivity of *Robinson* predates Lang's application for PCR.

> (4) that the evidence probably would have changed the result of the trial.

*More*, 880 N.W.2d at 499 (quoting *Jones v. State*, 479 N.W.2d 265, 274 (Iowa 1991)). For the evidence presented at trial to violate due process, "the evidence must be so inherently unreliable that it renders the trial fundamentally unfair." *Id.* at 500. The burden to show the verdict would have been different is higher than the harmless error standard and the prejudice prong of an ineffective-assistance-of-counsel claim. *Id.* at 510.

In 2009, the National Academy of Science published a report noting the unreliability of the type of hair analysis testimony discussed in Lang's case. On April 20, 2015, the FBI issued a joint press release with the U.S. Department of Justice, the Innocence Project, and the National Association of Criminal Defense Lawyers admitting microscopic hair analysis testimony by the FBI included erroneous statements in ninety percent of cases reviewed. David K. Boyd & Robert A. Hutchison, *Report of Independent Reviewers* 27 (June 1, 2018), https://www.iowacourts.gov/collections/291/files/519/embedDocument/. In May 2017, Lang was notified his case was under review and his conviction may have been affected by erroneous hair analysis testimony and DNA testing could be sought to provide evidence of innocence. Lang filed his amended application the next month.[7]

We find that the report and press release admitting the testimony's unreliability constitutes new factual evidence discovered after the verdict. *See*

---

[7] It appears from a June 5 letter that Lang had indicated to the Iowa Special Defense Unit he did not wish to pursue DNA testing on the hairs collected.

*More*, 880 N.W.2d at 508–10 (examining whether a report and letter finding compositional bullet lead analysis evidence was no longer scientifically supportable constituted new evidence for purposes of postconviction review); *see also Commonwealth v. Chmiel*, 173 A.3d 617, 625–28 (Pa. 2017) (concluding the FBI's 2015 press release on hair analysis testimony contained information not in the public domain prior to its release and constituted new evidence). The FBI's concession that ninety percent of cases included erroneous statements could not have been discovered prior to the 2015 press release.

While we find Lang has shown the first two elements in prevailing on his claim, the hair analysis evidence was merely cumulative and not material to the issue in the case and the new evidence would not have changed the result of Lang's trial. The victim testified in vivid detail at trial and related how she came to be at Lang's home, his threats, and the injuries he inflicted; the jury was able to evaluate her credibility. The jury watched a tape of Lang's interview with the investigating officer. A taxi driver testified to dropping them off together near Lang's house. Testimony from the investigating officer indicated Lang admitted to the victim's presence at his house on the night in question, and Lang allowed the officers to search his house, which resulted in the seizure of items consistent with the victim's story, some of which had blood on them. A bag with videotapes and shoes belonging to the victim was found outside Lang's home.

The challenged hair analysis was part of the testimony by a criminalist from the Division of Criminal Investigation. His testimony discussed in depth the victim's blood type and blood found at the crime scene—noting the blood type combination detected from three types of tests performed is found in less than one-half of one

percent of the population. The criminalist testified to finding the disputed hairs "embedded in the blood." The criminalist described the hairs found at the crime scene as "similar" to the victim's known head hairs but did not claim they were identical, stating "similar" was as far as the comparison could go. During cross-examination, he admitted the hairs were not compared to anyone besides the victim.

Based on our review, we conclude Lang has not met the high standard of showing the verdict probably would have been different based on the evidence discrediting the hair analysis. The jury heard from and assessed the credibility of the victim. The jury heard testimony from the investigating officers and other witnesses. The criminalist was ambivalent about the usefulness of the hair analysis, noting it could only show similarity or dissimilarity rather than definitive identification, and concentrated on the blood analysis to place the victim at the scene. We find the hair analysis evidence presented at trial was cumulative to the blood testing evidence and the testimony presented and had little, if any, effect on the verdict. There is little chance the FBI press release would have changed the result of the trial.

We affirm the decision of the district court.

**AFFIRMED.**