# IN THE COURT OF APPEALS OF IOWA

No. 18-2021
Filed October 9, 2019

**FRANCISCO DE LA ROSA GARCIA,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Scott County, Nancy S. Tabor, Judge.

Francisco De La Rosa Garcia appeals the denial of his application for postconviction relief. **AFFIRMED.**

Frank Santiago of Santiago Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee State.

Considered by Potterfield, P.J., and May and Greer, JJ. Tabor, J., takes no part.

**GREER, Judge.**

Francisco De La Rosa Garcia appeals the district court's denial of his application for postconviction relief (PCR), arguing that his trial counsel failed to inform him of the immigration consequences of his guilty plea. We conclude Garcia's PCR application is time-barred and affirm the district court ruling.

## I. Background Facts and Proceedings.

On May 30, 2008, Garcia, an undocumented immigrant from Mexico, pleaded guilty to one count of forgery and one count of identity theft in violation of Iowa Code sections 715A.2 and .8 (2007). At all times relevant here, Garcia was represented by counsel and assisted by a Spanish-language interpreter.

During the plea hearing, Garcia's attorney explained the conversation she and Garcia had about the immigration consequences of his guilty plea,

> I've advised him, and he's aware, that the date he was in custody that—I think it's called ICE now—immigration placed a hold on him.[1] But I think he's pretty certain that he will be deported. We don't know for sure, but I think he believes that he will be deported upon completion of this case and his release from Scott County Jail.

Based upon this discussion, the judge asked Garcia if he understood that his plea could affect his immigration status. In response, Garcia confirmed that he understood and he was satisfied with the advice from his attorney. The court accepted his plea. Consequently, the court later sentenced Garcia to a suspended prison sentence and placed him on probation for two years.[2]

---

[1] There are documents in the criminal case record suggesting an ICE hold had been in place since at least April 2008.

[2] Garcia successfully completed probation and discharged his sentence in January 2010.

After the plea and sentencing process, Garcia did not appeal his conviction or sentence. Shortly after the plea, Immigration and Customs Enforcement (ICE) took Garcia into custody to begin removal proceedings. He was in jail for one week until he posted bond. Given the fear of removal from the country, Garcia then hired an immigration attorney and contested his deportation. That challenge to removal failed and an immigration judge ordered his deportation from the United States. He appealed this deportation decision.[3]

In February 2018, almost ten years after his guilty plea, Garcia applied for postconviction relief asking the court to vacate his plea and sentence. Relying on a recent Iowa Supreme Court case, *Morales Diaz v. State*, 896 N.W.2d 723 (Iowa 2017), Garcia argued that his attorney was ineffective by failing to explain the immigration consequences of his guilty plea before he entered it. According to Garcia, had he known the immigration consequences, he would not have pleaded guilty.

In the ruling on Garcia's application, the district court discussed the three-year time-bar for PCR applications, but it did not conclude that Garcia's application fell outside the statute of limitations. Instead, the district court determined that any new law created in *Morales Diaz* did not apply retroactively and that Garcia failed to prove his trial counsel's ineffectiveness as his counsel "provided him more information than was even required at the time." The court denied Garcia's PCR application. Garcia appeals.

---

[3] At the time of the PCR trial in October 2018, the deportation order was on appeal.

## II.  Standard of Review.

We generally review the district court's denial of a PCR application for correction of errors at law.  *Perez v. State*, 816 N.W.2d 354, 356 (Iowa 2012).  If the applicant raises a constitutional issue, however, our review is de novo.  *Id.*

## III.  Analysis.

The State argues that Garcia's PCR application is time-barred.  Garcia concedes that he did not file his application within three years after his conviction became final but he claims his application falls under an exception to the statutory time-bar.

Iowa Code section 822.3 establishes the statutory time-bar for PCR applications.  A PCR application

> must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued.  However, this limitation does not apply to a ground of fact or law that could not have been raised within the applicable time period.

Iowa Code § 822.3.

Fatal to his appeal, Garcia does not explain his late PCR application.  In short, Garcia realized the immigration consequences at the time of—or shortly after—his guilty plea.[4]  At the plea hearing, his attorney discussed the immigration hold ICE had placed on Garcia.  Likewise, ICE detained Garcia shortly after his plea, removal proceedings began, and Garcia began working with an immigration attorney to fight his deportation.  *See, e.g.*, *Escobar v. State*, No. 11-1707, 2012

---

[4] The record supports Garcia's knowledge of problems with his immigration status prior to the expiration of the appeal period, prior to the expiration of his sentence, and prior to the three-year statute of limitations period.

WL 3860457, at *2 (Iowa Ct. App. Sept. 6, 2012) ("[T]he deportation consequences were in existence at the time of [the applicant's] plea and sentencing, and could have been addressed in a postconviction proceeding within the full three-year period.").

Nevertheless, Garcia argues his 2018 application is timely because he filed it within three years after the Iowa Supreme Court's 2017 opinion in *Morales Diaz.* 896 N.W.2d at 732. Garcia argues that the ruling in *Morales Diaz* constitutes "a ground of fact or law that could not have been raised within the applicable time period." Iowa Code § 822.3. He asks us to apply *Morales Diaz* retroactively to his case and vacate his guilty plea.

However, in 2010, during the three-year period after Garcia's 2008 conviction became final, the United States Supreme Court decided *Padilla v. Kentucky,* 559 U.S. 356 (2010). In *Padilla*, the Supreme Court held that a criminal defendant has a Sixth Amendment right to advice from counsel on the immigration consequences of a criminal conviction before pleading guilty. 559 U.S. at 367–68. Likewise, the Supreme Court later decided that *Padilla* announced a new rule that did not apply retroactively, so "defendants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding." *Chaidez v. United States*, 568 U.S. 342, 344 (2013).

Given the Supreme Court's ruling in *Padilla*, the Iowa Supreme Court in *Morales Diaz* held "counsel has an obligation to inform his or her client of all the adverse immigration consequences that competent counsel would uncover." 896 N.W.2d at 732. *Morales Diaz* requires that "the specific statutory consequences

need to be explained with reasonable clarity so a full and measured decision to plead guilty can be made." *Id.*

We have concluded *Morales Diaz* "is not a change in law but rather an application of the existing law found in *Padilla*." *Ramirez v. State*, No. 16-1893, 2018 WL 2727707, at *5 (Iowa Ct. App. June 6, 2018); *accord Zacarias v. State*, No. 18-0686, 2019 WL 3714815, at *2 (Iowa Ct. App. Aug. 7, 2019) (finding that because *Morales Diaz* merely applied existing law, it provided the appropriate standard for evaluating a case that became final after *Padilla* but before *Morales Diaz*). Because *Morales Diaz* applied existing law, it does not qualify as a new-ground-of-law exception to the three-year time-bar of Iowa Code section 822.3. *See, e.g.*, *Perez*, 816 N.W.2d at 360–61 (noting that if *Padilla* had merely clarified existing law, it would apply retroactively but the PCR applicant "should have raised his claim regarding failure to advise of immigration consequences within the three-year limitations period of section 822.3"). As a result, Garcia's postconviction application is time-barred.

**IV. Disposition.**

For the above stated reasons, we affirm the district court's denial of Garcia's application for postconviction relief.

**AFFIRMED.**

Potterfield, P.J., concurs; May, J., concurs specially.

**MAY, Judge** (concurring specially)

I agree the district court properly denied relief. I write separately to suggest the district court was also correct in concluding *Morales Diaz v. State*, 896 N.W.2d 723 (Iowa 2017) created a "new rule" that should not be applied retroactively.

Like the district court, I think *Teague v. Lange*, 489 U.S. 288, 310 (1989), provides useful guidance for deciding whether criminal-procedure decisions like *Padilla v. Kentucky*, 559 U.S. 356 (2010) and *Morales Diaz* apply retroactively. *See also Brewer v. State*, 444 N.W.2d 77, 81 (Iowa 1989) (adopting *Teague*'s holding). "*Teague* makes the retroactivity of . . . criminal procedure decisions turn on whether they are novel." *Chaidez v. United States*, 568 U.S. 342, 347 (2013). When a case announces a "new rule," a postconviction-relief (PCR) applicant usually cannot "benefit from the decision." *Id.*; *see Nguyen v. State*, No. 11-0549, 2013 WL 1170326, at *1–2 (Iowa 2013) (applying *Chaidez* in an Iowa PCR).

But what is a "new rule"? Under *Teague*, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." 489 U.S. at 301. "To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* "And a holding is not so dictated," the Supreme Court later explained, "unless it would have been 'apparent to all reasonable jurists.'" *Chaidez*, 568 U.S. at 347 (quoting *Lambrix v. Singletary,* 520 U.S. 518, 527–28 (1997)).

So, the question is this: In light of *Padilla*, would the requirements imposed by *Morales Diaz* have been "apparent to all reasonable jurists"? Like the district court, I believe the answer is "no."

*Padilla* focused on "deportation," a word that appears over fifty times in the majority opinion alone. 559 U.S. at 369. The *Padilla* court emphasized the "unique" nature of deportation, a severe "penalty" equivalent to "banishment or exile." *Id.* at 365, 373. At the same time, *Padilla* recognized "[i]mmigration law can be complex, and it is a legal specialty of its own." *Id.* at 369. So, the court imposed only limited immigration responsibilities on criminal defense counsel. Specifically, under *Padilla*, if a review of federal statutes makes it "truly clear" that a plea will result in "deportation," counsel must clearly advise the client about that deportation consequence. *Id.* But when "the law is not succinct and straightforward,"—when it is not clear whether the plea will subject the client to deportation—"a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* That is all *Padilla* required. *Id.*; *Lopez-Penaloza v. State*, 804 N.W.2d 537, 546 (Iowa Ct. App. 2011) ("Because the statutory provision governing the deportation consequences of Lopez–Penaloza's guilty plea was not 'succinct, clear, and explicit,' we conclude defense counsel owed her the more limited duty of advising her 'that pending criminal charges may carry a risk of adverse immigration consequences.' . . . No more was required under *Padilla*." (Citation omitted)).

*Morales Diaz* requires much more. *Morales Diaz* requires criminal "defense counsel [to] embrace his or her new role as a 'crimmigration' attorney." 896 N.W.2d at 728. Under *Morales Diaz*, it is no longer enough for defense counsel to advise about the deportation consequence alone. *Id. at* 732. In addition to addressing deportation, or "removal," *Morales Diaz* requires counsel to *also* advise

clients about "all" other "potential adverse" immigration "consequences" of the plea. *See id.* Those potential consequences include: "removal, exclusion, bars to relief from removal, immigration detention, denial of citizenship, and adverse consequences to the client's immediate family." *Id. (*citation omitted).

I believe these new requirements broke "new ground." *Compare id.*, *with Padilla*, 559 U.S. at 369. They went well beyond *Padilla*'s requirement of deportation-related advice. They were not "dictated" by *Padilla. Morales Diaz*, 896 N.W.2d at 732 (stating "[w]e do not believe clients expect their counsel to only advise them that the chances of deportation are certain or possible," which was *Padilla*'s sole mandate). They would not have been "apparent to all reasonable jurists" who had read *Padilla.* They were not "apparent" to the concurring justices in *Morales Diaz.* Nor were they "apparent" to several other appellate courts who had "declined to expand *Padilla*'s scope beyond advice on deportation." *Id.* at 735 (Mansfield, J., specially concurring). For example, as the *Morales Diaz* majority acknowledged, appellate courts in Florida and Tennessee had read *Padilla* "to impose a duty on counsel only to warn of the risk of deportation, *not of other consequences* such as foreclosure of cancellation of removal or a permanent bar on reentry." *Id.* at 730 (emphasis added).

So I believe *Morales Diaz* should not be applied retroactively. But I acknowledge that, in two prior cases, our court has concluded otherwise. *See Zacarias v. State*, No. 18-0686, 2019 WL 3714815, at *2 (Iowa Ct. App. Aug. 7, 2019) (holding *Morales Diaz* was "the appropriate standard for evaluating" attorney's performance concerning pre-*Morales Diaz* plea); *Ramirez v. State*, No. 16-1893, 2018 WL 2727707, at *5 (Iowa Ct. App. June 6, 2018) (rejecting State's

argument that *Padilla*—rather than *Morales Diaz*—controlled analysis of counsel's performance in a 2012 pre-*Morales Diaz* plea; holding *Morales Diaz* "is not a change in law but rather an application of the existing law found in *Padilla*"). I respectfully suggest we should consider a different approach.