Khamfeuang **THONGVANH, Appellant,**

v.

**STATE of Iowa, Appellee.**

No. 92–67.

Supreme Court of Iowa.

Jan. 20, 1993.

Blake Parker of Parker & Fors, Fort Dodge, for appellant.

Bonnie J. Campbell, Atty. Gen., Sheryl A. Soich, Asst. Atty. Gen., James J. Koll, County Atty., and Cynthia Voorde, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN, and SNELL, JJ.

SCHULTZ, Justice.

In 1984, Khamfeuang Thongvanh, a Laotian refugee, was convicted of killing an elderly Laotian refugee in violation of Iowa Code sections 707.1 and 707.2 (1983). The court of appeals affirmed his conviction and life sentence. *State v. Thongvanh*, 398 N.W.2d 182 (Iowa App.1986). Thongvanh now appeals from a denial of his application for postconviction relief. We affirm.

On appeal, applicant raises two issues concerning the use of an interpreter during the trial. First, he maintains that the type of interpretation he received was inadequate to insure that he understood everything that was said throughout the trial. Second, he maintains that he received ineffective assistance of counsel because counsel failed to object to the method and quality of the translation. Additionally, applicant raises issues concerning ineffective assistance of counsel based on trial counsel's failure to object to the jury selection and to request a participation instruction.

These issues involve constitutional questions. Our scope of review is an "independent evaluation of the totality of the circumstances." *Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981).

I. *Adequacy of the interpretation.* Iowa Code section 622A.2 (1983) provides:

Every person who cannot speak or understand the English language and who is a party to any legal proceeding or a witness therein, shall be entitled to an interpreter to assist such person throughout the proceeding.

Chapter 622A specifies neither the interpreter's duties nor the procedures that should be used when an interpreter is required.

Prior to applicant's murder trial, the trial judge spoke with him and determined that an interpreter should be provided. The Bureau of Refugee Services provided an interpreter who spoke fluently in Lao. Although applicant's first language is Thai Dam, his second language is Lao and he speaks it fluently. At trial, applicant and the interpreter communicated with each other in Lao.

At trial, an electronic system was installed whereby the court, the witnesses and the attorneys had microphones placed by them to transmit the oral court proceedings to the interpreter who sat and listened in an ante-chamber. The interpreter, who had a separate microphone, then translated what was being said to the applicant, who listened to him through headphones. Applicant was not able to directly communicate with his interpreter during the taking of evidence.

Applicant speaks some English; his trial counsel, Allan Goode and William Habhab, estimated that applicant understood thirty to forty percent of a normal English conversation. Counsel testified that by speaking slowly and selecting their words, they could communicate with applicant. Prior to trial, counsel had informed applicant to nudge them or talk to them if he had any problems understanding the interpreter or if he wanted to tell them anything. He was also told that the judge would allow a recess if the applicant wanted to talk to counsel. Goode testified they talked to applicant throughout the course of the trial and that "before we commenced cross-examination of all the witnesses we turned to the [applicant] and asked him if he understood what they were saying, if there [was] anything he wanted us to ask them."

Habhab testified he never had occasion to wonder if applicant clearly understood the proceeding. He further testified that "no problems [were] apparent" with the translation and this was a "successful use" of an interpreter.

■ *A. Type of translation.* Applicant objects to the type of translation he was provided. He asserts that he was denied the right to be present at his own trial because he did not receive simultaneous translation. Simultaneous translation is interpretation that occurs while someone is speaking. Consecutive translation is interpretation that follows a statement. Applicant argues that simultaneous translation is required in order to satisfy the constitutional requirement that a trial be fundamentally fair.

The general standard for adequate translation of trial proceedings "requires continuous word for word translation of everything relating to the trial a defendant conversing in English would be privy to hear." *United States v. Joshi,* 896 F.2d 1303, 1309 (11th Cir.1990). The court stated:

Defendant errs, however, in assuming that occasional lapses from this standard, particularly when they are not objected to by the defendant, will render a trial fundamentally unfair. Although a continuous word for word translation of the proceedings will always pass constitutional muster, minor deviations from this standard will not necessarily contravene a defendant's constitutional rights.

*Id.*

Applicant points out that a witness, director of the Bureau of Refugee Services, believed there was a combination of consecutive and simultaneous translation at the trial. However, the director admitted that he had no direct knowledge of whether or not there was verbatim interpretation during the trial. Applicant's expert witness for language interpretation indicated that simultaneous translation would be difficult without the use of two interpreters because of the fatigue factor involved in simultaneous translation. We note, however, that the trial judge did ask all of the witnesses to allow a five second pause between the

question asked and their answer in order to accommodate the interpreter. Additionally, the interpreter was instructed to give simultaneous translation.

Furthermore, the record does not indicate that applicant made any objection relating to the adequacy of translation or to the arrangements for translation. "A reviewing court is unlikely to find that a defendant received a fundamentally unfair trial due to an inadequate translation in the absence of contemporaneous objections to the quality of the interpretation." *Joshi*, 896 F.2d at 1310. The Eleventh Circuit has noted that:

> Only if the defendant makes any difficulty with the interpreter known to the court can the judge take corrective measures. To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse.

*Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir.1989).

We are aware that a non-English speaking defendant can only have proper and adequate cross-examination if he is able to understand the testimony of the witnesses and is able to communicate effectively with his defense counsel. When the trial court asked whether the interpreter "was a good interpreter" and whether the applicant understood "him when he talks to you and tells you what is going on in the court room" the applicant answered "Yeah, I understand."

Applicant cites *United States ex rel. Negron v. New York*, 434 F.2d 386 (2d Cir.1970), to support his contention that the translation he received was inadequate. However, this is unlike the situation in *Negron* where the criminal defendant spoke no English, could not communicate with his attorney, and only received a summary translation of the witness' testimony during recesses at trial. We are convinced that the interpreter adequately translated the testimony to the applicant.

Our view of the record indicates that the applicant was not deprived of his constitutional rights guaranteeing him a fair trial.

Because of the ability of the applicant to communicate with counsel, the precautions taken by the trial judge to give the interpreter time to translate, and the applicant's failure to object to the adequacy of translation at any time during the trial, we reject applicant's claim.

■ B. *Method of translation.* Applicant also objects to the placement of the interpreter in the ante-chamber rather than at the defense table. Although the interpreter did not sit at the defense table to interpret between the applicant and his attorneys, the attorneys indicated that they could communicate with the applicant. His counsel testified they talked to applicant during trial, asked him questions and that he gave responses that were consistent with the questions asked. Additionally, other jurisdictions have held that the absence of an interpreter from counsel table does not, in itself, compel the conclusion that fundamental fairness is violated. *People v. Avila*, 797 P.2d 804, 806 (Colo.App. 1990); *see also People v. Rodriguez*, 165 A.D.2d 699, 560 N.Y.S.2d 143, 144 (1990). We conclude applicant was not deprived of fundamental fairness by his inability to immediately communicate with his interpreter.

■ II. *Ineffective assistance of counsel.* In evaluating the claim of ineffective assistance of counsel, we seek to determine whether, under all circumstances, counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–93 (1984). A criminal defendant must show counsel failed to perform an essential duty and prejudice resulted therefrom. *Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981).

A. *Failure of counsel to object to the method and quality of the translation.* Applicant claims that his counsel breached an essential duty in allowing the interpreter to be confined to the ante-chamber of the courtroom, translating the testimony by headphones. Because we believe the

translation was adequate, we hold that applicant cannot show that his counsel failed to perform an essential duty by not objecting to the quality of translation.

Both trial counsel testified at the post-conviction relief hearing and described their interactions with the applicant at his criminal trial. Goode testified that during breaks and recesses in the trial, they asked applicant if he was getting the translation okay and applicant answered that he was. Applicant never complained to them about the quality of the translation. Furthermore, they both testified they were able to communicate with the applicant to a limited extent even in the absence of the interpreter. Our evaluation of the totality of the circumstances compels us to find that applicant's trial counsel were not ineffective in failing to object to the procedures used by the trial court to provide translation to the applicant.

B. *Jury venire and petit jury.* Applicant maintains that he was denied his Sixth Amendment right to assistance of counsel because of trial counsel's failure to object to the selection of the jury venire and petit jury. He argues that because the jury venire was unrepresentative of Asians in the community, defense counsel should have objected to the venire and the petit jury.

Defendant in a criminal prosecution is entitled to an impartial jury. If systematic and intentional exclusion of an identifiable, eligible group prevents a jury from being representative of the community, a defendant is denied his right to a proper jury. *Ballard v. United States,* 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946); *State v. King,* 225 N.W.2d 337, 341–42 (Iowa 1975).

Applicant argues that systematic and intentional exclusion of Asians from the jury pool prevented the jury from being representative of the community and violated his Sixth Amendment right to an impartial jury.

■ To establish a prima facie violation of the requirement that a jury be representative of the community the applicant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to the systematic exclusion of the group in the jury-selection process.

*State v. Watkins,* 463 N.W.2d 411, 414 (Iowa 1990). There is no constitutional requirement that a class be represented in exact proportions to the general population. *Watkins,* 463 N.W.2d at 414. The Supreme Court has explained that it imposes:

> no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups from the community and thereby fail to be reasonably representative thereof.

*Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690, 703 (1975) (citations omitted). In *King,* we held that "a criminal defendant's right to an impartial jury does not guarantee representation of his race on the jury panel." *King,* 225 N.W.2d at 342.

■ Jurors for applicant's trial were selected through voter registration and drivers' license lists. These lists contain information regarding a person's name, address and birth date. Occasionally, a name is selected from the phone book. There were no Asian jurors on applicant's jury. According to applicant's calculations, there was a .18 percent absolute disparity between Asians picked for jury duty and Asians in the general population of Webster County. Applicant argues that this disparity demonstrates Asians were significantly underrepresented in the jury selection process.

In *State v. Jones,* 490 N.W.2d 787 (Iowa 1992), we held that an absolute disparity of 1.5 percent was insufficient to establish a

prima facie violation of the Sixth Amendment. We conclude applicant has not made a prima facie case of underrepresentation in this case. Further, we do not believe applicant has established that the disparity that does exist is due to a systematic exclusion of Asians from jury duty.

 Applicant also argues that his attorneys were ineffective because they did not object to the composition of the petit jury. Applicant claims counsel should have objected to the inclusion of three jury members who were present during voir dire when a juror, subsequently excused, made a prejudicial comment about applicant. The three people who heard the comment were questioned and trial counsel determined that the three jurors found the comment inappropriate and biased. We find no failure on the part of trial counsel to perform an essential duty because they allowed these jurors to remain on the jury panel.

■ C. *Jury instruction.* Applicant complains that his lawyers were ineffective in not requesting a jury instruction defining the concept of participation as it applies to a felony murder. The postconviction court found that this claim had no merit. On appeal, applicant urges that the jury was required to determine whether he was guilty of first-degree murder because he participated in a forcible felony without having received a definition of "participation."

In evaluating counsel's performance when he or she fails to request an instruction, "we are convinced that not every right to insist that a particular instruction be given need be availed of by counsel in order to satisfy the standard of normal competency." *State v. Blackford,* 335 N.W.2d 173, 178 (Iowa 1983). A definition of the term "participation" as used in the instruction "while participating in a robbery," is not necessary. The term "participating" is a term of common usage and readily understandable.

Furthermore, the instruction did not involve a fighting issue at trial. The issue at trial was whether the applicant or someone else committed the robbery and killing, not whether the murder was committed during the robbery.

We hold that applicant did not show that his trial counsel failed to perform an essential duty by not requesting a participation instruction.

III. *Summary.* We have reviewed all applicant's claims of error and hold the trial court correctly denied his application for postconviction relief.

AFFIRMED.