# IN THE SUPREME COURT OF IOWA

No. 18–0885

Filed January 24, 2020

**KHAMFEUNG THONGVANH,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Webster County, Adria A.D. Kester, Judge.

An applicant for postconviction relief seeks further review of a court of appeals decision affirming the dismissal of his application. **AFFIRMED.**

Jamie L. Hunter of Dickey & Campbell Law Firm, PLC, Des Moines, and Andrew J. Smith of Mack, Hansen, Gadd, Armstrong & Brown, P.C., Storm Lake, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven, Assistant Attorney General, Darren Driscoll, County Attorney, and Brad M. McIntyre, Assistant County Attorney, for appellee.

**WIGGINS, Chief Justice.**

An applicant sought postconviction relief (PCR), claiming a violation of his constitutional right to an impartial jury drawn from a fair cross section of the community under the United States and Iowa Constitutions. He based his claim on *State v. Plain,* 898 N.W.2d 801 (Iowa 2017). The district court dismissed his PCR application, and he appealed the order of dismissal.

On appeal, we find *Plain* is a new ground of law allowing an applicant to bring a PCR action after the three-year statute of limitations in Iowa Code section 822.3 (2018) has run. Nonetheless, we affirm the order of dismissal because we find our holding in *Plain* does not apply retroactively to cases on collateral review.

## I. Background Facts and Proceedings.

A jury convicted Khamfeung Thongvanh of first-degree murder in 1984. He appealed, and the court of appeals affirmed his conviction in 1986. *State v. Thongvanh,* 398 N.W.2d 182, 184, 189 (Iowa Ct. App. 1986) (en banc). A few years later, he filed a PCR application, raising among other things a fair-cross-section claim. *Thongvanh v. State* (*Thongvanh II*), 494 N.W.2d 679, 680, 683 (Iowa 1993). We affirmed the denial of that application in 1993. *Id.* at 684.

On June 30, 2017, we decided *Plain,* which addressed the *Duren* three-part test for evaluating Sixth Amendment fair-cross-section claims. 898 N.W.2d at 821–28; *see Duren v. Missouri,* 439 U.S. 357, 364, 367–68, 99 S. Ct. 664, 668, 670 (1979) (laying out test for evaluating Sixth Amendment fair-cross-section claims). Under *Duren,* the criminal defendant must first establish a prima facie fair-cross-section violation by showing

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Plain*, 898 N.W.2d at 822 (quoting *Duren*, 439 U.S. at 364, 99 S. Ct. at 668). Then, if the defendant establishes a prima facie violation, "the burden shifts to the state to justify the disproportionate representation by proving 'a significant state interest' is 'manifestly and primarily advanced' by the causes of the disproportionate exclusion." *Id.* (quoting *Duren*, 439 U.S. at 367–68, 99 S. Ct. at 670).

In *Plain*, we expressly overruled our precedent that had adopted the absolute-disparity method as the exclusive indicator of representativeness under the second prong of *Duren*. *Id.* at 826. That is, we held,

Parties challenging jury pools on the ground that they are unrepresentative may base their challenges on multiple analytical models [such as the absolute disparity, comparative disparity, and standard deviation tests]. The district court may use multiple analytical models in its analysis, taking into account the various strengths and weaknesses of each test when determining whether jury pools comport with the Sixth Amendment mandate of representativeness.

*Id.* at 827.[1]

This past term we modified *Plain*'s holding in *State v. Lilly*, 930 N.W.2d 293, 302 (Iowa 2019). *Lilly* involved a fair-cross-section claim raised under both the Sixth Amendment and article I, section 10, but the defendant did not advance a distinct analysis under article I, section 10. *Id.* at 300, 301. Accordingly, we applied the Sixth Amendment framework

---

[1]*Plain* also addressed the *Duren* test's third prong—systematic exclusion. *Plain*, 898 N.W.2d at 827–28. But because Thongvanh did not develop any new arguments regarding *Plain*'s holding on the third prong, that portion of *Plain* is not pertinent here.

under article I, section 10 but reserved the right to apply that framework differently. *Id.* at 301.

We held that neither the absolute disparity method nor the comparative-disparity method is appropriate to use when considering the underrepresentation prong of a fair-cross-section claim. *Id.* at 302. However, we acknowledged that the standard deviation method is appropriate. *Id.* In *State v. Veal* and *State v. Williams*, two companion cases to *Lilly*, we applied *Lilly*'s holding with modifications to Sixth Amendment fair-cross-section claims and further discussed the application of *Plain* to such claims. *Veal*, 930 N.W.2d 319, 328–30, 328 n.5 (Iowa 2019); *Williams*, 929 N.W.2d 621, 629–30, 629 n.1 (Iowa 2019).

On January 26, 2018, Thongvanh filed the instant PCR application. Relying on our holding in *Plain*, he alleged he was denied his rights to due process, equal protection, and a fair and impartial trial under the United States and Iowa Constitutions. The State moved to dismiss Thongvanh's application, contending no new ground of law or fact obviated Iowa Code section 822.3's three-year statute of limitations and section 822.8 barred Thongvanh's fair-cross-section claim. The State did not argue or contend that Thongvanh's application should be dismissed because *Plain* is not retroactive.

Thongvanh resisted, arguing section 822.3's limitations period did not apply because *Plain* constitutes a new ground of law that could not have been raised within the applicable time period. Like the State, he did not discuss *Plain*'s retroactivity.

During the hearing on the State's motion to dismiss, the court inquired whether *Plain* can apply retroactively to a fair-cross-section claim made on collateral review and then ordered the attorneys to brief that issue in more detail. In his posthearing brief, Thongvanh argued *Plain* created

a watershed rule of criminal procedure that implicates the fundamental fairness of a trial and, thus, could apply retroactively to cases on collateral review.

The district court disagreed with Thongvanh and granted the State's motion to dismiss. It first concluded that *Plain* is not retroactive because, "[d]espite the imperative of fair jury representation in criminal matters, by merely permitting challenges based on different statistical models, *Plain* does not make a 'watershed rule of criminal procedure.'"

The court also concluded that neither equal protection nor due process require retroactive application of *Plain* to cases on collateral review. It acknowledged Thongvanh's contention that the Iowa Constitution provides greater guarantees of equal protection than the Federal Constitution but noted Thongvanh did not explain why the Iowa provision should provide protection that is any different than that of the federal provision.

Lastly, the court noted that Thongvanh had been unable to establish the third prong of the *Duren* fair-cross-section test—systematic exclusion—in his 1993 PCR case. It found he had not presented any new ground of law or fact that would allow reconsideration of our conclusion in Thongvanh's 1993 appeal. Particularly, that he had not established the underrepresentation of Asians on his jury panel was due to systematic exclusion of Asians from jury duty.

Thongvanh appealed, and we transferred the case to the court of appeals. The court of appeals agreed with the district court that Thongvanh's claim based on *Plain*'s holding on the second prong of the *Duren* test was a new ground of law not previously available to Thongvanh and, therefore, was not time-barred by section 822.3. It also agreed that *Plain* is not retroactive because it did not create a watershed rule of

criminal procedure. Finally, it declined Thongvanh's invitation to interpret the Iowa Constitution to give broader retroactive application to new rules of criminal procedure than under federal caselaw, reasoning our precedent precluded it from doing so and it was not at liberty to ignore or modify that precedent.

We granted Thongvanh's petition for further review.

## II. Scope and Standards of Review.

"Our review of the court's ruling on the State's statute-of-limitations defense is for correction of errors of law." *Phuoc Thanh Nguyen v. State*, 829 N.W.2d 183,186 (Iowa 2013) (quoting *Harrington v. State*, 659 N.W.2d 509, 519 (Iowa 2003)). We will affirm if substantial evidence supports the district court's findings of fact and the court correctly applied the law. *Id.*

Similarly, we review the district court's ruling on the motion to dismiss for correction of errors of law. *Shumate v. Drake Univ.*, 846 N.W.2d 503, 507 (Iowa 2014). "For purposes of reviewing a ruling on a motion to dismiss, we accept as true the petition's well-pleaded factual allegations, but not its legal conclusions." *Id.* When the petition's allegations are taken as true yet fail to state a claim upon which relief may be granted, we will affirm the district court's granting of the motion to dismiss. *Id.*

## III. Issues.

We address two issues in this appeal. First, whether Thongvanh's *Plain* claim is time-barred by section 822.3. Second, whether *Plain* can apply retroactively to a case on collateral review.

## IV. Whether Thongvanh's *Plain* Claim Is Time-Barred by Iowa Code Section 822.3.

The State appears to challenge the district court's conclusion that, because Thongvanh filed his PCR application raising his *Plain* claim within three years of *Plain,* his *Plain* claim is not time-barred by section 822.3.

Section 822.3 requires PCR applications "be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." Iowa Code § 822.3. There is an exception to that three-year statute of limitations for "a ground of fact or law that could not have been raised within the applicable time period." *Id.*

Thongvanh contends that a challenge to a jury pool based on *Plain* is a ground of law that could not have been raised before *Plain* was decided. We agree.

When Thongvanh raised his fair-cross-section claim in his original PCR application and we rejected that claim on appeal in 1993, the absolute-disparity method was the exclusive test used in Iowa when evaluating the second prong of the *Duren* test. *See State v. Jones*, 490 N.W.2d 787, 793 (Iowa 1992) (expressly rejecting reliance on the comparative-disparity method and holding the absolute-disparity method "is the appropriate method to be used"), *overruled in part by Plain*, 898 N.W.2d at 826; *see also Plain*, 898 N.W.2d at 825 (indicating *Jones* resulted in the exclusive use of the absolute-disparity method); *Thongvanh II*, 494 N.W.2d at 683–84 (finding criminal defense counsel was not ineffective for failing to raise a fair-cross-section claim because the results of the absolute-disparity method prevented the PCR applicant from making a prima facie case of underrepresentation); *State v. Huffaker*, 493 N.W.2d 832, 833–34 (Iowa 1992) (rejecting the defendant's fair-cross-section claim after considering only the absolute disparity method).

*Plain* effected an unmistakable change in the law when it expressly overruled *Jones*. *Cf. Phuoc Thanh Nguyen*, 829 N.W.2d at 188 (discussing the felony-murder rule as law at the time of the defendant's conviction and our decision in *State v. Heemstra,* 721 N.W.2d 549 (Iowa 2006) was not

"simply a 'clarification of the law' or 'an application of preexisting law' "
but an express overruling of prior law (quoting *Perez v. State*, 829 N.W.2d
354, 360–61 (Iowa 2012))). Specifically, we stated in *Plain*,

> Our decision to adopt absolute disparity as the exclusive test
> and to reject comparative disparity in *Jones* rested upon an
> error of law and on cases from other jurisdictions that have
> since been overruled or criticized. After surveying the various
> tests, and bearing in mind the practical problems associated
> with the use of the absolute disparity test in Iowa, we conclude
> it is no longer appropriate to rely exclusively upon the
> absolute disparity test as an indicator of representativeness.
> We therefore overrule *Jones*, 490 N.W.2d at 792–93.

898 N.W.2d at 826.

*Plain*'s overruling of *Jones* is distinguishable from a situation such
as the one in *Perez*, 816 N.W.2d 354. In *Perez*, we concluded the Supreme
Court's holding in *Padilla v. Kentucky*, 559 U.S. 356, 374, 130 S. Ct. 1473,
1486 (2010)—that a criminal defendant has a Sixth Amendment right to
be advised by counsel of the risk of deportation before pleading guilty—
was not a new ground of law under section 822.3. *Perez*, 816 N.W.2d at
360. We found Perez could have raised such an argument before *Padilla*
was decided, even though at the time of Perez's guilty plea our caselaw
imposed a different rule. *Id.* at 360–61. We explained that a case
challenging our precedent was pending at the time Perez's conviction
became final and that while we did not overrule our precedent in that
pending case, we acknowledged there was some merit to the argument to
do so. *Id.* at 360. Additionally, we noted that at any time, the Supreme
Court could have overturned any of our precedents, which is what
eventually happened in *Padilla*. *Id.* Finally, we noted that shortly after we
declined to overrule our precedent, we amended Iowa Rule of Criminal
Procedure 2.8 to require defendants be informed that pleading guilty may
affect their immigration status under federal law. *Id.*

Unlike in *Perez,* we had not considered or espoused any disagreement with *Jones*'s holding before *Plain.* Rather, we had reaffirmed sole use of the absolute-disparity method. *See Thongvanh II,* 494 N.W.2d at 683–84; *Huffaker,* 493 N.W.2d at 833–34; *see also State v. Lambert,* 501 N.W.2d 64, 68 (Iowa Ct. App. 1993) (utilizing the absolute-disparity method without questioning our exclusive reliance on it).

Because we had clearly held to the contrary in *Jones,* between 1993—when procedendo issued following our rejection of Thongvanh's fair-cross-section claim in his original PCR application—and 1996—when the three-year statute of limitations period ran—Thongvanh could not have successfully argued that the jury pool in his criminal trial was not drawn from a fair cross section of the community as demonstrated by using any method other than absolute disparity as the indicator of representativeness. *See Phuoc Thanh Nguyen,* 829 N.W.2d at 188 (stating that the exception to section 822.3's limitations period "must envision a category of legal claims that were viewed as fruitless at the time but became meritorious later on"). Thus, Thongvanh's *Plain* claims are not barred by section 822.3's three-year statute of limitations.

**V. Whether *Plain* Can Apply Retroactively to a Case on Collateral Review.**

Thongvanh contends our holding in *Plain* applies retroactively to cases on collateral review under the retroactivity analysis provided by the United States Supreme Court in *Teague v. Lane,* 489 U.S. 288, 109 S. Ct. 1060 (1989). Alternatively, he asks us to adopt a broader approach to retroactivity under the Iowa Constitution's due process and equal protection clauses.

**A. Retroactivity Under *Teague.*** *Teague* and its progeny lay out the framework for whether a new rule announced in a Supreme Court

opinion applies retroactively to cases on federal habeas review—what we will refer to as the "*Teague* framework." *E.g.*, *Danforth v. Minnesota*, 552 U.S. 264, 266, 281–82, 128 S. Ct. 1029, 1032, 1042 (2008); *Whorton v. Bockting*, 549 U.S. 406, 416, 127 S. Ct. 1173, 1180 (2007); *Schriro v. Summerlin*, 542 U.S. 348, 351–52, 124 S. Ct. 2519, 2522–23 (2004); *Nguyen v. State* (*Nguyen II*), 878 N.W.2d 744, 753 & n.3 (Iowa 2016). Under this framework, a "new rule" includes one that "was not dictated by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S. Ct. at 1070 (emphasis omitted).

New substantive rules will generally apply retroactively. *E.g.*, *Schriro*, 542 U.S. at 351, 124 S. Ct. at 2522. These are rules "that narrow the scope of a criminal statute by interpreting its terms as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id.* at 351–52, 124 S. Ct. at 2522 (citation omitted); *accord Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 728 (2016) ("Substantive rules include 'rules forbidding criminal punishment of certain primary conduct,' as well as 'rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S. Ct. 2934, 2953 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304, 321, 122 S. Ct. 2242, 2252 (2002))). They apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal' or faces a punishment that the law cannot impose." *Schriro*, 542 U.S. at 352, 124 S. Ct. at 2522–23 (quoting *Bousley v. United States*, 523 U.S. 614, 620, 118 S. Ct. 1604, 1610 (1998)).[2]

---

[2]"Although *Teague* describes new substantive rules as an exception to the bar on retroactive application of *procedural* rules, th[e] Court has recognized that substantive

Conversely, under the *Teague* framework, new rules of procedure generally do not apply retroactively. *E.g., Montgomery*, 577 U.S. at ___, 136 S. Ct. at 728. The Court has explained that this is because their connection to innocence is more attenuated:

> New rules of procedure . . . do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.

*Schriro*, 542 U.S. at 352, 124 S. Ct. at 2523. Accordingly, it gives retroactive effect to only new " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 728 (quoting *Schriro*, 542 U.S. at 352, 124 S. Ct. at 2523). Watershed rules implicating fundamental fairness are those

> best illustrated by recalling the classic grounds for the issuance of a writ of habeas corpus—that the proceeding was dominated by mob violence; that the prosecutor knowingly made use of perjured testimony; or that the conviction was based on a confession extorted from the defendant by brutal methods.

*Teague*, 489 U.S. at 313–14, 109 S. Ct. at 1077 (quoting *Rose v. Lundy*, 455 U.S. 509, 544, 102 S. Ct. 1198, 1216–17 (1982) (Stevens, J., dissenting)). *See generally Danforth*, 552 U.S. at 271–73, 128 S. Ct. at 1036 (summarizing the development of under what grounds federal habeas relief was available).

The *Teague* retroactivity framework resulted from the Court interpreting the scope of the relief available under the federal habeas statute. *Danforth*, 552 U.S. at 278–79, 128 S. Ct. at 1039–40. In other

---

rules 'are more accurately characterized as . . . not subject to the bar.' " *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 728 (second alteration in original) (emphasis added) (quoting *Schriro*, 542 U.S. at 352 n.4, 124 S. Ct. at 2522 n.4).

words, the *Teague* test indicates whether the federal habeas statute requires that a new rule be given retroactive application to cases that were already final when the new rule was announced. But that framework "does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed 'nonretroactive' under *Teague*." *Id.* at 282, 128 S. Ct. at 1042.

We have applied the *Teague* framework when determining whether we will retroactively apply Supreme Court holdings. *See Nguyen II*, 878 N.W.2d at 753; *see also, e.g.*, *Perez*, 816 N.W.2d at 358–60 (using *Teague* framework when considering whether the Court's holding in *Padilla*, 559 U.S. 356, 130 S. Ct. 1473, applies retroactively); *Bonilla v. State*, 791 N.W.2d 697, 700–01 (Iowa 2010) (concluding the Court's holding in *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011 (2010), applies retroactively under the *Teague* framework); *Morgan v. State*, 469 N.W.2d 419, 422–25 (Iowa 1991) (applying *Teague* framework when considering whether to retroactively apply the Court's holding in *Coy v. Iowa*, 487 U.S. 1012, 108 S. Ct. 2798 (1988)); *Brewer v. State*, 444 N.W.2d 77, 81–82 (Iowa 1989) (relying on *Teague* framework to determine whether the Court's holding in *Duren*, 439 U.S. 357, 99 S. Ct. 664, should be given retroactive effect to a case on collateral review). However, we have not yet adopted that framework for evaluating the retroactive effect of our own holdings. *See Nguyen II*, 878 N.W.2d at 753–54.

There can be little dispute that *Plain* announced a new rule under the *Teague* framework as *Plain*'s holding on the second *Duren* prong "was not dictated by precedent existing at the time [Thongvanh]'s [original post]conviction[-relief judgment] became final." *Teague*, 489 U.S. at 301, 109 S. Ct. at 1070 (emphasis omitted). *Plain*'s holding expressly departed from the rule dictated by precedent at the time the judgment in

Thongvanh's original PCR action became final.[3]  Additionally, it would be contradictory to conclude *Plain* announced a new ground of law under section 822.3 while also concluding it did not announce a new rule—but was merely an application of preexisting law—for *Teague* retroactivity purposes.  *See Perez*, 816 N.W.2d at 360.

On appeal, the court of appeals found that our holding in *Brewer* foreclosed any relief for Thongvanh.  In *Brewer*, we applied the *Teague* framework and concluded that the new rule of criminal procedure from the Court's *Duren* case, i.e., a modification of the standard applied in fair-cross-section challenges, would not be given retroactive effect to a case on PCR.  444 N.W.2d at 80, 81–82.  We found *Duren* did not create a watershed rule of criminal procedure and relied on the following reasoning from *Teague*:

> Because the absence of a fair cross section on the jury venire does not undermine the fundamental fairness that must underlie a conviction or seriously diminish the likelihood of obtaining an accurate conviction, we conclude that a rule requiring that petit juries be composed of a fair cross section of the community would not be a "bedrock procedural element" that would be retroactively applied under the second exception we have articulated.

*Id.* at 81–82 (quoting *Teague*, 489 U.S. at 315, 109 S. Ct. at 1078).  The court of appeals, here, reasoned that because *Duren*'s new fair-cross-

---

[3]We acknowledge that *Teague* defined a new rule as one that "was not dictated by precedent existing at the time the defendant's *conviction* became final."  489 U.S. at 301, 109 S. Ct. at 1070 (emphasis added).  Here, Thongvanh's conviction became final in 1986, but the precedent we overruled in *Plain*—our holding in *Jones* that absolute disparity was the exclusive method for evaluating the second *Duren* prong—was not announced until 1992.  Therefore, at the time Thongvanh's *conviction* became final, no precedent dictated that absolute disparity was the exclusive method for evaluating the second *Duren* prong.

However, the State makes no argument that *Plain* does not announce a new rule with respect to Thongvanh based on the law in effect at the time Thongvanh's conviction became final.  Accordingly, we assume without deciding that a new rule under the *Teague* framework can include one that was not dictated by precedent existing at the time the defendant or PCR applicant originally raised the legal challenge.

section rule was not retroactive in *Brewer*, *Plain*'s new fair-cross-section rule could not be retroactive in Thongvanh's collateral review case.

Under a straight application of the *Teague* framework, as we utilized in *Brewer*, *Plain*'s holding would not qualify as a watershed rule. Nothing in subsequent Supreme Court caselaw has directly rejected or abrogated *Teague*'s explanation of why a violation of the right to a jury venire drawn from a fair cross section (or a modification to the standard used to determine if there was such a violation) does not undermine the fundamental fairness of the trial or seriously diminish the likelihood of obtaining an accurate conviction. *See Teague*, 489 U.S. at 315, 109 S. Ct. at 1078).

The same analysis applies even if it were argued that *Plain* error amounts to structural error for which no prejudice need be shown. Structural errors are those "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 1833 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 1265 (1991)). "Such errors 'infect the entire trial process,' and 'necessarily render a trial fundamentally unfair.'" *Id.* (first quoting *Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S. Ct. 1710, 1717 (1993); and then quoting *Rose v. Clark*, 478 U.S. 570, 577, 106 S. Ct. 3101, 3106 (1986)). In contrast, a trial error is "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante*, 499 U.S. at 307–08, 111 S. Ct. at 1264. When there is structural error, "the criminal adversary process itself [becomes] 'presumptively unreliable.'" *Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011) (quoting *United States v. Cronic*, 466 U.S.

648, 659, 104 S. Ct. 2039, 2047 (1984)). *See generally United States v. Gonzalez-Lopez*, 548 U.S. 140, 148–49, 126 S. Ct. 2557, 2563–64 (2006) (dividing constitutional errors into trial errors, which are subject to harmless-error review, and structural defects, which defy analysis under the harmless error standard).

While neither we nor the Supreme Court has expressly weighed in on whether a violation of the Court's holding in *Taylor*—that defendants have a Sixth Amendment right to a jury drawn from a fair cross section of the community—or in *Duren*—establishing the test for a fair-cross-section claim—qualifies as a structural error, one circuit court has. In *United States v. Rodriguez-Lara*, the Ninth Circuit concluded, "The selection of a grand or petit jury in violation of either the equal protection or the fair cross-section guarantee is structural error." 421 F.3d 932, 940 (9th Cir. 2005), *overruled on other grounds by United States v. Hernandez-Estrada*, 749 F.3d 1154, 1164 (9th Cir. 2014). The Ninth Circuit's conclusion accords with the well-established rule that unlawful discrimination in the jury-selection process is structural error. *See, e.g., Batson v. Kentucky*, 476 U.S. 79, 87, 100, 106 S. Ct. 1712, 1718, 1725 (1986) (noting harms of racial discrimination in jury selection and holding that a violation of its holding required reversal of the conviction); *Vasquez v. Hillery*, 474 U.S. 254, 263, 106 S. Ct. 617, 623 (1986) ("[W]hen a petit jury has been selected upon improper criteria or has been exposed to prejudicial publicity, we have required reversal of the conviction because the effect of the violation cannot be ascertained."); *Duren*, 439 U.S. at 370, 99 S. Ct. at 671–72 (establishing fair-cross-section test and reversing without engaging in a harmless-error or prejudice analysis); *Taylor v. Louisiana*, 419 U.S. 522, 537–38, 95 S. Ct. 692, 701–02 (1975) (holding categorically excluding women from juries violates the Sixth Amendment's fair-cross-

section requirement and reversing without engaging in a harmless-error or prejudice analysis); *Strauder v. West Virginia*, 100 U.S. (10 Otto) 303, 305, 312 (1879) (invalidating a state statute that provided only white men could serve as jurors and holding it was error to proceed to trial with such a jury), *abrogated on other grounds by Taylor*, 419 U.S. at 536 n.19, 537, 95 S. Ct. at 701 & n.19.

However, even if a violation of the fair-cross-section right is structural error, this does not mean that it affects the fundamental fairness of the criminal trial or is "central to an accurate determination of innocence or guilt." *Teague*, 489 U.S. at 313, 109 S. Ct. at 1077; *see Weaver v. Massachusetts*, 582 U.S. ___, ___, 137 S. Ct. 1899, 1908 (2017) ("An error can count as structural even if the error does not lead to fundamental unfairness in every case."). As the Court explained in *Weaver*, there are three general reasons for why a particular error is determined to be structural: (1) "if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest," such as the defendant's right to self-representation; (2) "if the effects of the error are simply too hard to measure," such as when a defendant is denied the right to counsel of choice; and (3) "if the error always results in fundamental unfairness," for example, when an indigent is denied the right to an attorney. 582 U.S. at ___, 137 S. Ct. at 1908.

Here, even if a violation of the right to a fair cross section is a structural error, it would not be of the kind that would protect the defendant from a fundamentally unfair trial. Likewise, a new rule changing how a defendant can challenge a violation of the fair-cross-section right would not implicate the fundamental fairness of the trial and would, therefore, not qualify as a watershed rule.

Under the *Teague* framework, we conclude that *Plain*'s holding on the second prong of the *Duren* test constitutes a new rule under the *Teague* framework. However, because it is not a watershed rule of criminal procedure, it does not apply retroactively to cases on collateral review. The *Teague* framework does not permit Thongvanh to make a *Plain* claim on PCR.

**B. Retroactivity Under the Iowa Constitution's Due Process and Equal Protection Guarantees.** Thongvanh asks us to adopt our own framework for retroactivity under the Iowa Constitution's due process and equal protection guarantees that provide for broader retroactivity than the Court's *Teague* framework.[4] *See* Iowa Const. art. I, §§ 6, 9. Thongvanh proposes that we use the retroactivity rule from *Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708 (1987), as the baseline for our constitutional retroactivity framework.

In *Griffith*, the Court held that

> a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past.

479 U.S. at 328, 107 S. Ct. at 716. At issue there was the retroactivity of the holding in *Batson*, 476 U.S. 79, 106 S. Ct. 1712, to cases "pending on

---

[4]We reiterate, as discussed above, that the Court's *Teague* framework is used to determine whether the federal habeas statute allows a court to grant relief on collateral review based on a new rule. *Danforth*, 552 U.S. at 278, 128 S. Ct. at 1040. The *Teague* framework does not dictate when the relief based on a new rule is *constitutionally* required—at least not with respect to the watershed-rule exception. *See Montgomery*, 577 U.S. at ___, 136 S. Ct. at 729 (clarifying that *Teague*'s rule that new substantive rules apply retroactively "is best understood as resting upon constitutional premises" but also reserving the question of the constitutional status of *Teague*'s watershed-rules exception for another day). Accordingly, it is important to clarify that the *Teague* framework was not designed as the test for determining whether a constitutional guarantee—such as due process or equal protection—requires a new rule of criminal procedure apply retroactively to cases on collateral review.

direct state or federal review or not yet final when *Batson* was decided." *Griffith*, 479 U.S. at 316, 107 S. Ct. at 709. However, Thongvanh's criminal conviction and sentence became final long ago, and thus he would not benefit from the *Griffith* holding.

In essence, Thongvanh is asking us to apply the same retroactivity rule for cases that are not final at the time the new rule is announced to cases that have become final at the time the new rule is announced. In support of this request, he appears to argue that people whose convictions have become final at the time the new rule is announced are similarly situated to people whose convictions have not become final.

He notes that *Plain* and empirical evidence recognize that underrepresentation of minorities in jury pools can affect trial outcomes. *See Plain*, 898 N.W.2d at 826. He appears to argue that, therefore, any person denied the application of *Plain* is similarly situated—regardless of whether that person's conviction had become final at the time *Plain* was decided.

We are not persuaded by his argument. The *Griffith* Court expressly acknowledged that in *United States v. Johnson*, 457 U.S. 537, 102 S. Ct. 2579 (1982), it "concluded that the retroactivity analysis for convictions that have become final must be different from the analysis for convictions that are not final at the time the new decision is issued." *Griffith*, 479 U.S. at 321–22, 107 S. Ct. at 712. And it noted that the *Johnson* Court largely adopted the rationale for distinguishing between cases that had become final and those that had not as explained in Justice Harlan's separate opinions in *Desist v. United States*, 394 U.S. 244, 256, 257–58, 89 S. Ct. 1030, 1038 (1969) (Harlan, J., dissenting), and *Mackey v. United States*, 401 U.S. 667, 679–81, 91 S. Ct. 1171, 1173–74 (1971) (Harlan, J. concurring in the judgment). *Griffith*, 479 U.S. at 322, 107 S. Ct. at 712–

13. Thongvanh makes no attack on Justice Harlan's rationale or the *Johnson* Court's decision to largely adopt that rationale. Thus, Thongvanh does not explain why persons whose cases had become final are similarly situated to persons whose cases had not become final.

We recognize that the composition of jury pools can have real-world effects. That is why we changed the law in *Plain.* In fact, since 1984, when Thongvanh was tried and convicted, Iowa's criminal justice system has evolved in many ways—hopefully for the better. We believe if Thongvanh were tried today, thirty-six years later, he would receive better procedural protections on the whole. But against this consideration, we have to weigh the need for finality of judgments when the issue does not bear directly on guilt or innocence and the impracticality of reconstructing events that occurred between three and four decades ago.[5]

We are not persuaded that either the *Teague* framework or the Iowa Constitution's due process and equal protection guarantees require *Plain* to apply retroactively to convictions that were already final at the time we decided *Plain.* The district court did not err in concluding Thongvanh could not rely on *Plain* as the basis for his current PCR application.

---

[5]Another point to be noted is that Thongvanh, unlike Teague and Brewer, did not raise any objection at trial to the composition of the jury pool or panel, even an objection under the then-existing law. *See Thongvanh II*, 494 N.W.2d at 683 ("Applicant maintains that he was denied his Sixth Amendment right to assistance of counsel because of trial counsel's failure to object to the selection of the jury venire and petit jury."); *cf. Teague*, 489 U.S. at 293, 109 S. Ct. at 1066 (noting that Teague moved twice for a mistrial); *Brewer*, 444 N.W.2d at 79 (noting that the alleged constitutional infirmities were "preserved at trial" and Brewer was seeking a "re-evaluation of his original claim that the statutory exclusion of persons aged sixty-five and over from his jury panel violated his sixth and fourteenth amendment rights to a fair and impartial jury"). We have no occasion to decide today how a ruling that *Plain* is retroactive would be applied to the case where the defendant did not make a contemporaneous objection.

## VI.  Disposition.

We conclude *Plain*'s holding on the second prong of the *Duren* test constitutes a new ground of law under section 822.3.  However, because we find that the new law of criminal procedure announced in *Plain* does not apply retroactively to cases on collateral review, we affirm the dismissal of Thongvanh's PCR application.

**AFFIRMED.**

All justices concur except McDonald, J., who takes no part.