# IN THE COURT OF APPEALS OF IOWA

No. 24-1255
Filed June 18, 2025

**JACOB AYUEL BEER,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

    Appeal from the Iowa District Court for Fremont County, Jeffrey L. Larson, Judge.

    An applicant appeals the denial of his application for postconviction relief. **AFFIRMED**.

    Debra S. De Jong, Orange City, for appellant.

    Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee State.

    Considered without oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**GREER, Presiding Judge.**

Jacob Beer was charged with operating while intoxicated (OWI), third or subsequent offense, following a traffic stop on February 27, 2022. He had previously been arrested in Minnesota and South Dakota for substantially similar crimes. Beer pled guilty on May 27, 2022, but after pursuing an unsuccessful procedural legal course to contest his conviction on direct appeal,[1] Beer applied for postconviction relief (PCR) in May 2023. Drilling down, Beer argued his counsel was ineffective for failing to request and secure a South Sudan language interpreter,[2] which resulted in his misunderstanding what the written guilty plea meant, as he now asserts he only wanted to go to trial. Following an evidentiary hearing on the application, the district court found that none of the PCR grounds were meritorious and denied the application.

Concluding that Beer failed to show he was prejudiced, we affirm the denial of his PCR petition.

**I. Background Facts and Proceedings.**

In his PCR petition, Beer alleged his plea counsel provided ineffective assistance. In its ruling on the application for PCR, the district court summarized the underlying facts and proceedings pertaining to Beer's plea for OWI, third or subsequent offense, as:

On May 27, 2022, [Beer's plea counsel] filed a signed plea of guilty on behalf of Beer. The Court accepted the plea and sentenced Beer

---

[1] Beer filed an appeal following his conviction, but our supreme court concluded he lacked good cause and dismissed the appeal for lack of jurisdiction.

[2] During the PCR hearing the interpreter indicated she was requested to use the Dinka language. The Dinka are the largest ethnic group in South Sudan, comprising about 40% of the population. *South Sudan*, Britannica, https://perma.cc/9HR3-XDPH.

on June 3, 2022, to an indeterminate sentence of five years of incarceration with all but 90 days suspended.

On June 21, 2022, Beer wrote a letter to the Court stating that he was deceived by the State into signing the guilty plea and that he needed a translator to fully understand. . . . On July 8, 2022, a second letter from Beer was received by the Court. In it, Beer again stated that he did not fully understand the proceedings and needed a translator. Beer also stated that "she", which the Court presumes to be [Beer's plea counsel], filed the wrong plea on May 27, 2022. . . .

On October 10, 2022, Beer appealed. . . . On March 21, 2023, the Iowa Supreme Court dismissed Beer's appeal finding that he failed to establish good cause necessary to appeal his guilty plea. On April 25, 2023, Beer filed another [motion] asserting that he did not fully understand the proceedings concerning his plea and sentencing as he needed a translator and that one of his past convictions should not be considered as a substantially similar offense. On June 28, 2023, Beer [sent] a letter repeating his arguments that the [Residential Correctional Facility] was improperly retaining his money.

The PCR court denied the PCR application. Although Beer initially raised seven arguments as to why his plea counsel was ineffective, he narrows the challenges to only two on appeal.

## II. Standard of Review.

"We typically review [PCR] proceedings on error. However, when the applicant asserts claims of a constitutional nature, our review is de novo. Thus, we review claims of ineffective assistance of counsel de novo." *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001) (internal citation omitted). We give weight to the district court's findings concerning credibility. *Id.*

## III. Discussion.

Beer challenges the district court's denial of his application for PCR, arguing his counsel was ineffective for (1) failing to secure an interpreter and (2) failing to

explain his guilty plea to him before he signed it.[3]  Both of these challenges come down to whether Beer misunderstood the terms of his plea of guilty plea—either because he could not understand the language used or his plea counsel did not provide a full explanation.  On our review, we find Beer was not prejudiced by counsel's failure to retain an interpreter.  Thus, we affirm the PCR court's denial of Beer's PCR application.

"To prevail on a claim of ineffective assistance of counsel, the applicant must demonstrate both ineffective assistance and prejudice."  *Id.* at 142; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984).

"To establish the first prong, the applicant must demonstrate the attorney performed below the standard demanded of a reasonably competent attorney."  *Ledezma*, 626 N.W.2d at 142 (Iowa 2001); *see also Strickland,* 466 U.S. at 687.  We evaluate each claim of deficient performance under the "totality of the circumstances."  *Ledezma,*626 N.W.2d at 142.    The applicant must show that counsel's performance was deficient by a preponderance of the evidence.  *See Strickland*, 466 U.S. 668 at 694.  There is a presumption that counsel performed competently.  *Ledezma*, 626 N.W.2d at 142.

---

[3] We read Beer's brief to set forth an additional argument—that his written guilty plea did not adequately comply the requirements set forth by Iowa Rule of Criminal Procedure 2.8(4), which includes that the plea must substantially comply with Rule 2.37, Form 12, and "[d]emonstrate[] the defendant has been informed of and understands the matters set forth in rule 2.8(2)(b)*(1)–*(9)."  But these provisions did not take effect until July 1, 2023, and not all were a requirement at the time Beer signed and entered his guilty plea.  Even if Beer was seeking some retroactive application of rule 2.8(4), because this argument was not raised to or decided by the PCR court, error is not preserved.  *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012).  We do not consider the merits of this claim.

The second prong, prejudice, "exists where the [applicant] proves by a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Clay*, 824 N.W.2d 488, 496 (Iowa 2012) (cleaned up). In the context of a guilty plea, to satisfy the prejudice prong, the applicant "must show that there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." *Sothman v. State*, 967 N.W.2d 512, 523 (Iowa 2021) (citation omitted).

"[B]oth elements do not always need to be addressed. If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Ledezma*, 626 N.W.2d at 142; *see also Strickland*, 466 U.S. at 697.

First, we ask if the record shows counsel was ineffective by failing to secure an interpreter for Beer. *See* Iowa Code § 622A.2(1) (2022) (providing that "[a] limited-English-proficient person who is a party to any legal proceeding or a witness therein, shall be entitled to an interpreter to assist such person throughout the proceeding"). "The general standard for adequate translation of trial proceedings 'requires continuous word for word translation of everything relating to the trial a defendant conversing in English would be privy to hear.'" *Thongvanh v. State*, 494 N.W.2d 679, 681 (Iowa 1993) (citation omitted). Here, the district court found that under a broad definition of "limited English proficiency" Beer would require access to an interpreter. Yet, the district court determined that Beer had not shown prejudice from any lack of interpretation. We agree.

Beer's challenge is not that he could not understand what a plea agreement was because of his limited English proficiency, but instead his claim is that he was not adequately informed about what the document he signed was. Beer acknowledged that he knew what a plea agreement was from his past experiences. Now, Beer claims that had his trial counsel filed an application and secured an interpreter, "[he] would not have signed the plea of guilty and would have instead proceeded with trial." But Beer's claim he would have insisted on going to trial if an interpreter explained the written guilty plea to him is not credible based on the sophistication of Beer's communication with the court after signing the plea agreement and considering his testimony at the PCR trial.

Beer articulated at the PCR hearing that his plea attorney sat down with him in detention and discussed the plea agreement and other subjects including immigration issues and the impact of the other similar offenses for three hours. And Beer was aware that plea negotiations were occurring as the record shows on May 23, 2022, his attorney stated at pre-trial conference, "Your Honor, my client is rejecting the plea offer at this time. . . . We've been moving forward but it's been just a very short time that we've had our relationship and at this point in time he's not comfortable accepting the State's offer as it sits." The State's offer was set to expire the following Friday, May 27, at which time the State would advocate for a prison term. This was the same day Beer signed the plea agreement.

The PCR court addressed this challenge, describing Beer's statements at the PCR hearing related to his discussions with plea counsel as "discordant." Beer's testimony at the PCR hearing confirmed that he was aware a written guilty plea was ready, he knew what a guilty plea was, and he had discussed the option

of pleading guilty but then claimed he blindly signed the document presented wrongly believing it confirmed his desire to go to trial. He did not say that his attorney told him that was what it said and he misunderstood. He simply claims that he did not read it and signed it anyway. It does not make sense that Beer blindly signed a document without inquiring to its contents after a three-hour long conversation with his attorney, which occurred on the precipice of the plea agreement expiring. As the PCR court wrote in its ruling, "This strain on belief is made more striking by the fact that [Beer] appears to have been well-informed about other matters during the pendency [of] his case, such as his past convictions and whether they qualified as substantially similar offenses, and the dates of his hearings and trial." The PCR court found Beer's testimony that he would have insisted on going to trial not credible.

The PCR court noted that Beer was able to confirm his understanding of the interpretation offered by the PCR interpreter and that her English answers were correct. At the hearing, Beer explained, "My English is limited. I can understand English. But sometimes some terms, some phrases, some sentences are long and big, and I cannot understand those." Later, when the court asked, "Mr. Beer, are you able to listen to the interpreter in English and verify that the translation is more or less correct or complete?" Beer responded, "Yes. The way I—my voice, the interpreter is doing it like—the same, my voice."

The letters and motions Beer sent to the district court after the acceptance of his guilty plea and sentencing, which Beer acknowledged he personally drafted, also show Beer's understanding of English and the plea process were "far greater than his trial testimony indicated"—as the PCR court put it. Less than one month

after signing the plea agreement, Beer wrote to the court. The letter was in English, handwritten, and—although there were several typos—demonstrated an understanding of grammar. Beer started the letter stating that he was "decieved by the State to sige the paper that I did not fully understand because I really needed a South Sudan translator fully to comprvend all aspects do he States Pea sentencing." Beer continued, alerting the court to issues he faced in jail—he did not know where his motor vehicle was and struggled obtaining information from uncooperative staff. Only two weeks later, on July 3, Beer sent another letter to the district court, repeating, "In this matters I did not fully understanding because I really needed a South Sudan translator to fully comprehend all aspects of the States plea. She was file the wrong form on this day of May 27, 2022." The letter continued to argue that his offenses in Minnesota and South Dakota did not constitute "substantially similar offense[s]." In these two handwritten communications, Beer demonstrated proficiency in reading and writing the English language. And in those letters he did not assert that he did not want to sign a plea agreement; he argued he did not understand all aspects of the written agreement.

On April 19, 2023, Beer sent another letter to the court. He again stated, "The state all fully comprehend. I didn't fully understand because I was looking for a translator with the South Sudanese language." The remainder of the letter discussed representations made by the prosecutor in his case.

Finally, on June 28, Beer sent his final letter with the court.[4] The letter discussed issues with "Category B" restitution and withholding funds. The letter

---

[4] A copy of this letter was sent once more, on September 5, 2023 (and filed on September 11).

closed with, "I want my money that's right fully be longs to me. This is all I ask of you." The June 28 letter is rife with legal terminology, which Beer explained during PCR proceedings was copied from other sources that he used for research in the library. Absent in this letter is any assertion Beer would not have pled guilty had an interpreter been assigned to him or had counsel explained the plea agreement to him.

Finally, the evidence against Beer was strong in the underlying criminal case, and the State had stated that if Beer did not sign the plea agreement that allowed for no prison time it would pursue the prison alternative.[5] And Beer offered only his self-serving testimony that he wanted to proceed to a jury trial. After considering the totality of the evidence, along with the PCR court's assessment of his credibility, Beer failed to show prejudice in the plea-bargaining process. *See Dempsey v. State*, 860 N.W.2d 860, 869 (Iowa 2015) (providing an applicant "must proffer more than his or her own subjective, self-serving testimony" to establish the outcome of the plea process likely would have been different absent counsel's ineffective assistance).

As a result, we do not find plea counsel's failure to secure a translator prejudiced Beer. Because we do not find prejudice, Beer's claim that plea counsel was ineffective for failing to secure a translator fails on the second prong of the ineffective-assistance analysis. *See Strickland*, 466 U.S. at 687.

---

[5] Beer's charge of OWI, third or subsequent offense, was a class "D" felony, which carried a maximum term of incarceration not to exceed five years in prison. Iowa Code § 321J.2(2)(c), (5).

**IV. Conclusion.**

Beer failed to show he was prejudiced by plea counsel's failing to secure a translator or explain the written guilty plea. As a result, Beer's claims of ineffective assistance fail. We affirm the denial of his PCR petition.

**AFFIRMED.**